## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE<br>c/o Laffey, Bucci & Kent<br>1100 Ludlow Street, Suite 300<br>Philadelphia, PA 19107<br><br>                          Plaintiffs,<br><br>         v.<br><br>WILLIAMSPORT AREA SCHOOL DISTRICT, LYCOMING COUNTY, DR. BRANDON PARDOE, ROGER FREED, SEAN McCANN, RYAN MILLER, FRED A. HOLLAND, ESQ., WILLIAM WEBER, in his individual and official capacity, and JOHN and JANE DOEs #1-#20 (ficticious names), whose true identities are currently unknown to Plaintiffs,<br><br><br>                          Defendants. | CIVIL ACTION NO. _____<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, John Doe, by and through his undersigned counsel Laffey, Bucci & Kent LLP and Stapp Law, LLC, hereby brings the following Complaint before this Honorable Court and avers the following in support thereof:

## JURISDICTIONAL STATEMENT

1.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action to recover

damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

2.      This Court has supplemental subject matter jurisdiction over all related state claims herein pursuant to 28 U.S.C. § 1367, which gives the federal district courts jurisdiction over all other claims related to claims in the action by which the Court has original jurisdiction that are arising out of the same case or controversy under Article III of the United States Constitution.

3.      Plaintiff brings this action to redress a hostile educational environment where Plaintiff was subject to sexual harassment and has standing to bring forth his claim pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, as set forth more fully herein.

4.      Plaintiff also seeks redress under the Pennsylvania common law theories of negligence and negligence per se against the Defendants.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since the defendant resides in this district and the events giving rise to the claims occurred in this district.

## PARTIES

6.      Plaintiff, John Doe (fictitious, anonymous name), is an adult male whose name and address are not contained in this Complaint so as to protect his privacy and identity as he incurred injuries and damages of a sensitive nature as a minor child as a result of the negligent acts and failures of Defendants outlined below. Information which would or could identify John Doe is not contained herein. Plaintiff may be contacted through his counsel as outlined herein.

7.      Defendant Williamsport Area School District (hereinafter "WASD") is a school district organized pursuant to the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 1-101, *et seq.*, and maintains an office at 2780 W. 4th Street, Williamsport,

PA 17701. WASD operates Williamsport Area High School ("WAHS"), which Plaintiff John Doe attended.

8.      At all relevant times, Defendant WASD was the recipient of Federal Financial Assistance.

9.      Defendant Lycoming County (hereinafter "LC"), is a local government unit and is a county of the Commonwealth of Pennsylvania with business offices located at 330 Pine Street, Williamsport, PA 17701. LC oversees and/or controls the Lycoming County Office of the District Attorney (hereinafter "DA's Office"), located at 48 West Third Street, Williamsport, PA 17701, and its county detectives. LC is a "person" as the term is used in 42 U.S.C. § 1983.

10.      Defendant Dr. Brandon Pardoe is an adult individual, employed by the WASD, and was at all relevant times, the Head Principal of WAHS. Pardoe was responsible for ensuring that WAHS provides for the safety and care of children while in the custody of WASD.

11.      Defendant Roger Freed is an adult individual, employed by the WASD, and was at all relevant times, an Assistant Principal of WAHS. Freed was responsible for ensuring that WAHS provides for the safety and care of children while in the custody of WASD.

12.      Defendant Sean McCann is an adult individual, employed by the WASD, and was at all relevant times, the Athletic Director of WAHS. McCann was responsible for ensuring that WAHS provides for the safety and care of children while in the custody of WASD.

13.      Defendant Ryan Miller is an adult individual who was employed as the Head Baseball Coach for WAHS from approximately 2016 until April 2018. Miller was responsible for ensuring that WAHS provides for the safety and care of children while in the custody of WASD.

14.    Defendant Fred A. Holland, Esq., is an adult individual, employed by the WASD, and was at all relevant times, the Solicitor for Defendant WASD. Holland was responsible for ensuring that WAHS provides for the safety and care of children while in the custody of WASD.

15.    Defendant William Weber is an adult individual who was employed with LC as a LC County Detective, assigned to the DA's Office at all relevant times. Weber is sued in his official and individual capacities for his actions and/or inactions made under color of state law and in violation of Plaintiff's Constitutional rights as described more fully herein.

16.    Defendants Jane and John Does #1 through #20 are currently unknown by actual name after a reasonable search with due diligence. Defendants Does #1-#20 are believed and averred to have exposed Plaintiff to undue risk and actual harm by putting him in a situation where he could—and ultimately—would be sexually assaulted by another student, who failed to adequately investigate and respond to Plaintiff's sexual assault, and who conspired to cover up both the assault and their failures to properly investigate and respond to said assault. Defendants Does #1-#20 include, but are not limited to, administrators, school board members, teachers, counselors, coaches, former employees and/or charged agents/employees of Defendants WASD, LC, and other individuals who conspired with the aforementioned defendants and/or are responsible for Plaintiff's abuse, harassment, and the cover-up of said abuse and harassment..

17.    At all relevant times hereto, Defendants WASD and LC were acting by and through their duly authorized actual and/or apparent agents, servants and employees, in particular, their principals, vice principals, school board, school board presidents, teachers, staff, supervisors, and/or team coaches and/or activity coordinators, acting within the course and scope of their actual and/or apparent agency and/or employment.

18.     Defendants herein are directly and vicariously liable to Plaintiff for injuries sustained as a result of negligence, gross negligence, outrageous conduct, and reckless misconduct as described further herein, as well as for violations of Plaintiff's constitutional rights as described further herein, by persons or entities whose conduct was under their control, or right to control which conduct directly and proximately caused all of Plaintiff's injuries.

## **FACTUAL HISTORY**

19.     This lawsuit is about an educational institution that had special responsibilities and obligations to protect the most innocent among us—children and students—from sexual abuse and the complete and abject failures of that same educational institution to fulfill those responsibilities and obligations. Williamsport Area High School ("WAHS"), operated and administered by Defendant WASD, failed in its most basic legal duties to guard against the sexual abuse of a minor. However, this matter is also about the cover-up of abuse perpetrated by Defendant WASD and its staff/representatives/agents, including but not limited to Defendants Dr. Brandon Pardoe, Roger Freed, Sean McCann, Ryan Miller, and Fred Holland in choosing to protect their own reputation and the reputation of WASD at the expense of the safety and well-being of children in their care, custody, and/or control, including Plaintiff.

20.     WASD was able to cover-up abuse perpetrated on Plaintiff John Doe by another student enrolled at WAHS with the assistance of Defendant William Weber, a Lycoming County detective employed by Defendant LC and assigned to the DA's Office. Together they conspired with WASD and the above-named administrators and employees of WASD to conduct a fraudulent investigation which included the destruction and/or attempted destruction of evidence, the suppression and/or attempted suppression of witnesses, failure to cooperate with law enforcement, falsifying records and/or fabricating information in official investigatory documents, and other

acts and omissions further outlined throughout this Complaint which ensured that the perpetrator of Plaintiff's abuse was able to escape repercussion, thus depriving Plaintiff the opportunity for justice, discriminating against him, and violating his constitutional rights.

21.    Defendants WASD and LC failed in a myriad of ways including, but not limited to: (a) not properly vetting their staff, including Pardoe, Freed, McCann, Miller, Holland and Weber; (b) not properly training and/or supervising their staff; negligently retaining staff they knew or should have known were unqualified to supervise and protect students in their care and custody and/or who were actively working to cover-up the sexual assault of a child; (c) failing to investigate reports of concerning and/or criminal behavior; (d) and failing to have in place any legitimate measures to protect against, investigate, and respond to a student-on-student sexual assault, the very thing that happened to Plaintiff in this suit. Defendants did not simply stick their heads in the sand, they actively obstructed the administration of justice, discriminated against an innocent child victim to protect the perpetrator of a criminal sexual offense, made material misrepresentations to law enforcement and the public, and acted out of self-interest in order to protect the reputation of the school and the baseball team, thereby exposing thousands of vulnerable students to a dangerous environment and, in the process, violating Plaintiff's Constitutional rights.

## I.      The  Sexual Assault of Plaintiff

22.    Plaintiff John Doe enrolled as a freshman student at WAHS in the Fall of 2017. Plaintiff was a member of the high school's baseball team, the Millionaires.

23.    In March 2018, the WAHS baseball team took a trip to Myrtle Beach, South Carolina, to participate in a tournament of schools from around the country. Plaintiff was able to "earn" his way on this trip by raising his grades in two weeks and receiving the approval of all of his teachers before he could attend.

24.     The team was scheduled to be in Myrtle Beach from March 23, 2018, to March 30, 2018. Accompanying the team, comprised of approximately forty (40) students, were Head Coach Defendant Ryan Miller ("Miller") and assistant coaches David Heller, Tariq Moore, Kyler Schneider, Nick Caringi, and Joel Worthington.

25.     Several WAHS administrators, including WAHS Principal Defendant Brandon Pardoe ("Pardoe") and Athletic Director Defendant Sean McCann ("McCann"), both of whom had sons on the baseball team at the time, also made the trip. Defendant Pardoe also had a nephew on the Millionaires baseball team. Outside of the WAHS Baseball coaching staff and administrators, there were no other adult chaperones on the trip.

26.     George E. Lepley, Jr. ("Lepley"), a criminal defense attorney local to Williamsport, was also present in Myrtle Beach at the same time to watch his grandson play baseball in the tournament.

27.     The Millionaires baseball team, under Miller's name, reserved ten (10) bedrooms at the Atlantica Resort in Myrtle Beach: nine (9) two-bedroom suites and one (1) single bedroom suite. There were no more than two (2) rooms per floor assigned to Miller and the team—rooms were therefore scattered all over the sprawling Atlantica Resort tower.

28.     Students were assigned to bedrooms, despite Defendants WASD, Pardoe, McCann, and Miller denying record of such assignments existing for years subsequent to the events described herein.

29.     Upon information and belief, however, Defendants Pardoe and McCann did not stay with the team at the Atlantica Resort but instead at beach houses.

30.     In fact, some of the WASD administrators there to chaperone the baseball team attended a party at beach house in Garden City, South Carolina, with a portion of the team. Present

at the party were Pardoe and McCann and at least ten students. This event was approximately 11 miles from the Atlantica Resort. Upon information and belief, Head Coach Ryan Miller and assistant coaches David Heller, Tariq Moore, Nick Caringi, Kyle Schneider, and Joel Worthington were out in Myrtle Beach at the same time as the party, leaving the rest of the team unsupervised.

31.     One evening during the trip at the Atlantica Resort, Plaintiff was assaulted by at least one teammate while he slept. This student, B.M., sat on Plaintiff and placed his penis on Plaintiff's face, making skin-to-skin contact with him, while Plaintiff slept. B.M. also placed his bare buttocks on Plaintiff's face. Plaintiff did not consent to this criminal sexual conduct, which constitutes violations of Pennsylvania criminal statutes prohibiting Indecent Assault (18 Pa. C.S.A. § 3126), and Indecent Exposure (18 Pa. C.S.A. § 3127).

32.     Prior to the assault, B.M., and other students on the team repeatedly used racial slurs to refer to Plaintiff, who is black. After the assault, B.M. and/or other students on the team threatened to lynch Plaintiff if he told anyone about what occurred.

33.     Shockingly, this was not the only sexual assault to take place at the Atlantica Resort involving members of the Millionaires baseball team. Another student, Male Victim #1, was held down by multiple teammates while B.M. sodomized him with a television remote.

34.     The sexual assaults, including the assault of Plaintiff by B.M., was captured on a mobile device by another member of the team, Videographer #1.

35.     Upon information and belief, multiple videos were filmed. The first video shows B.M. in a state of undress, with his pants and underwear around his ankles, and Plaintiff in a room at the Atlantica Resort. Other individuals are heard in the video as being present in the room with B.M. and Videographer #1, including at least two additional WAHS teammates, one of whom is the nephew of Defendant Pardoe. These students are heard laughing. A second video depicts the

assault of Plaintiff: B.M. is seen sitting on Plaintiff's face, placing his penis on the face of the victim. A third video depicts the assault of Male Victim #1, who was held down by multiple teammates and can be heard screaming while B.M. attempts to or does in fact sodomize Male Victim #1 with a television remote. Multiple WAHS players are seen and heard as being present for the assaults in these videos.

36.     Upon information and belief, WASD agents, employees, administrators and/or coaches including but not limited to Pardoe, Miller, and McCann learned of the videos recorded of assault of Plaintiff and the other victims while the WAHS baseball team was still in Myrtle Beach, South Carolina. WASD agents, employees, administrators and/or coaches, including Pardoe—the Head Principal of the high school—then unlawfully instructed students on the baseball team to delete any videos they may have taken of the assault.

37.     However, these instructions either fell on deaf ears or were given too late as video of the assault was subsequently shared to the phone of B.M. and also shared on social media with multiple parties on the team and in the WASD community at large.

38.     In fact, B.M. even shared videos of the assault on his phone with other students in the WAHS cafeteria once the team returned to Williamsport. B.M. bragged about what had occurred.

39.     Upon information and belief, the WAHS Baseball team called an emergency meeting the day that B.M. shared the videos of the assault in the WAHS cafeteria. At the meeting, players were again instructed by WASD employees, agents, and/or representatives, to delete any evidence of the assault.

40.     In the days and weeks after returning to Williamsport, Plaintiff was called derogatory names, including "dick lips," by students at WAHS who had seen videos(s) of the assault.

41.     Shortly after the team returned from Myrtle Beach, Plaintiff was removed from the baseball team by WAHS.

42.     On or around May 18, 2018, a report was made to Lycoming County Children and Youth Services ("CYS") employees about an alleged sexual assault on some member(s) of the baseball team by other members of the team. These allegations pertained to the assaults of Plaintiff and Male Victim #1.

43.     These CYS employees are mandated reporters pursuant to 63 Pa.C.S. § 6311, *et seq*. They subsequently made a report to Child Line of the allegations and then contacted Defendant William Weber, then Chief County Detective for Defendant Lycoming County, who worked out of the Lycoming County District Attorney's Office. Weber, in turn, notified WAHS Principal, Defendant Brandon Pardoe, of the CYS report.

44.     In a report that Defendant Weber would author almost five months later in October 2018—the first and only time he drafted an investigative report related to the assault of Plaintiff—Weber recalls informing CYS in mid-May 2018 that he would look into the matter due to his "familiarity" with the WAHS baseball program since his son was previously a member of the Millionaires and Weber himself attended the Myrtle Beach tournament for three years.

45.     Defendant Weber also wrote that he informed Defendant Pardoe that Weber had no jurisdiction over what happened in Myrtle Beach, "but would assist and make referrals if need be." Weber also told Pardoe that he was "aware of the trip and what usually goes on during the annual trip."

46.     Both Defendant Pardoe and Defendant Weber are also mandated reporters pursuant to 63 Pa.C.S. § 6311, *et seq.* Neither ever made a report to Child Line concerning what they learned from CYS.

47.     Upon information and belief, it was also at this time in May 2018 that Defendant Weber gained possession of at least one of the videos depicting the assaults. However, Weber did not take any further action despite also being a mandated reporter and law enforcement official. Weber did not so much as even communicate the allegations of criminal sexual conduct to a single prosecutor in the LC DA's Office at or around the time he received the report.

48.     Moreover, Weber did not forward the video in his possession to the Myrtle Beach Police Department ("MBPD") nor contact them about the allegations, despite the MBPD being the proper law enforcement entity to have jurisdiction over the criminal behavior of B.M. in South Carolina.

## II.     The Response of WASD and LC to the Sexual Assault of Plaintiff

49.     Not a single individual from Defendants WASD or LC reached out to Plaintiff or his family in the immediate aftermath of the Child Line report. Plaintiff's family themselves had to contact the school district by placing a call to WAHS Assistant Principal Defendant Roger Freed ("Freed") on or about May 21, 2018. On this date, Freed denied any knowledge of the assault despite the school's principal, Defendant Pardoe, being made aware of it on May 18, 2018, at the very latest.

50.     On or about May 30, 2018, Defendants Pardoe, Weber, and Freed met with Plaintiff's family at WAHS in Pardoe's office. At this meeting, Plaintiff described what happened to him and provided Weber and Pardoe the names of those involved. Additionally, a video depicting the assault of Plaintiff in possession of the LC DA's Office was also shown to Plaintiff.

Plaintiff confirmed it was him in the video being assaulted. Pardoe and Weber then promised Plaintiff and his mother that they would get back to them—that they would first question those involved and keep them updated thereafter. Plaintiff's family *never* told Weber or any employee of WASD that they did not want to press charges against those responsible for Plaintiff's assault.

51.     In the report Weber would author almost five months later, he recounted this meeting with Plaintiff and his mother on or around May 30, 2018, and falsely reported that Plaintiff did not feel that the video of his assault was passed around much as nobody had mentioned it to Plaintiff during school. This is an outright lie.

52.     Weber concluded his assessment of the evidence in Plaintiff's case by stating "Clearly this is a hazing/bullying issue that the school properly handed." Accordingly, Defendant Weber felt "there was no referral to be made."

53.     In notes that Defendant Weber took contemporaneous to this meeting—not discovered until they were obtained via a search warrant issued by the Pennsylvania Office of the Attorney General—he wrote that B.M. admitted to the sexual assault.

54.     This meeting was the last time anyone from WASD had any contact with Plaintiff and his mother regarding the assault and the investigation into the assault.

55.     On or about the same day, May 30, 2018, Defendant Pardoe also met with Videographer #1 in his office at WAHS. At this meeting, Videographer #1 admitted to filming the assault and explained what happened. Pardoe then explained to Videographer #1 that he would be suspended from the baseball team for two games because he had to deal with a consequence of what occurred. Defendant Weber *never* interviewed Videographer #1.

56.     At some point close in time to the meeting with Videographer #1, Defendant Pardoe actually came to the home of Videographer #1's parent(s) and met Videographer #1's mother.

Defendant Pardoe told her to please not talk about what happened, that he had the situation under control, that the case was not going to go anywhere and not to worry about anything. Defendant Pardoe then apologized to the mother of Videographer #1 for having her son miss two games in the baseball season.

57.     Subsequent to his meeting with Videographer #1, Pardoe sent an email to WASD Superintendent Dr. Timothy Bowers ("Bowers") informing him that the investigation "with regard to the video taken on the Myrtle Beach trip" had begun—*twelve days* after receiving the Child Line report from CYS.

58.     In this email, Pardoe indicated that he met with Videographer #1, but he does not provide any detail about that meeting. In fact, Pardoe wrote "I can give you more information if we could talk." Pardoe then states that he requested to meet with B.M., who he refers to as "the student that was videoed doing the act to the other student," (referring to Plaintiff John Doe) and B.M.'s parents. Pardoe then suggests meeting with the WASD Solicitor Defendant Fred Holland ("Holland") because B.M. appeared to be getting an attorney. At the conclusion of this email, Pardoe says that he has a recommendation for the interim until he and Bowers could meet in person but does not elaborate further.

59.     On May 31, 2018, George Lepley wrote a letter addressed to Defendants Dr. Brandon Pardoe and Sean McCann, the WAHS Athletic Director, regarding "Misconduct Myrtle Beach." In this letter, Lepley states that he was contacted by the parents of B.M. regarding "potential criminal charges" and was now representing B.M.

60.     Furthermore, Lepley wrote to Pardoe and McCann that "a substantial number of players engaged in the exact same conduct" he then described as "inappropriate." Lepley also identified B.M. in the video of the assault. However, Lepley then threatened WASD with civil

action and deposing "any and all witnesses" if his client, B.M. was criminally prosecuted for what occurred on the Myrtle Beach trip. Lepley concluded: "Our goal is to make sure that one person is not singled out for conduct committed by a substantial number of team members."

61.     Lepley then asserted that he would be present for any meeting between WAHS administrators and B.M.

62.     On or about June 1, 2018, Pardoe emailed WASD Superintendent Bowers informing him that a meeting was scheduled for June 5, 2018, with B.M., his parents, and B.M.'s attorney, George Lepley. B.M.'s mother was apparently very defensive in a conversation with Pardoe and informed him that they would not meet with Pardoe without Lepley present. Pardoe also indicated that both B.M. and Videographer #1 would be suspended from baseball practice and play until WASD's "investigation" was complete.

63.     Furthermore, in his email to Bowers, Pardoe notes that both Defendant Holland and Defendant Weber had spoken to Lepley regarding the matter and that "both of these conversations went well."

64.     On or about June 4, 2018, Defendant Holland submitted an invoice for services rendered of 0.80 hours and noted that a telephone conference referred to as "Investigation" occurred on May 31, 2018. This conference call included Defendant Pardoe and Lepley.

65.     On June 5, 2018, the WASD School Board was finally made aware of the Myrtle Beach assaults.

66.     On or about July 3, 2018, Holland submitted a second invoice for a meeting he attended on June 5, 2018, regarding a voicemail left by Plaintiff's family. That same day, Holland attended a meeting with Defendant Pardoe and Lepley at WAHS, which lasted for approximately 1.8 hours.

14

67.     Plaintiff finished out his freshman year at WAHS but thereafter left WASD due to the repeated harassment he received after the assault and over the summer. The harassment Plaintiff was subject to was never addressed by WASD.

68.     The *only* punishment WASD imposed upon B.M., Videographer #1, and anyone else involved in or present for criminal sexual abuse of Plaintiff and other students, the recording of said vile acts, and the subsequent publication of those videos was a two-game suspension from the WAHS baseball team. Both B.M. and Videographer #1 were permitted to play in Millionaires games for months after the assaults, including in the twelve-day period between when the Child Line Report was made and the suspensions were enforced. In fact, B.M. was permitted to play in and receive gold medals for winning the PIAA District II/IV District Championship on May 28, 2018, after WASD learned he sexually abused a teammate.

69.     Neither B.M., Videographer #1, nor any other student involved in or present for the criminal sexual abuse of Plaintiff and other students was ever brought before the WASD School Board for a disciplinary hearing for possible expulsion, in contravention to well-established WASD policies and procedures, despite the WASD Superintendent being directly notified of conduct which would warrant such a reaction.

70.     For conduct that would later be referred to as "indecent and inappropriate" by Defendant Holland and "criminal sexual misconduct" by LC District Attorney Ryan Gardner, WASD imposed virtually no punishment for those who committed it.

71.     Moreover, Defendant Pardoe, in conjunction with Defendants Freed, McCann, Miller, Holland, Weber, and others who knew about the assault even prior to the May 18, 2018, Child Line report, conducted a biased and discriminatory investigation which included attempts to destroy evidence and silence witnesses.

72.     Defendant Weber, the LC law enforcement officer in charge of investigating or, at the very least, referring the investigation to a law enforcement agency with jurisdiction over the matter, likewise conspired with Defendants Pardoe, Freed, Holland and others to destroy evidence, silence witnesses, and conduct a biased and discriminatory investigation. In so doing, Defendants LC and Weber violated Plaintiff's Constitutional rights.

73.     At all relevant times, Defendants Pardoe, Freed, McCann, Miller, Holland, and Weber were duly authorized actual and/or apparent agents, servants and employees of WASD and LC, respectively, and were acting within the course and scope of their actual and/or apparent agency and/or employment with their respective employers.

### III.     Material Misrepresentations Regarding the Investigation of Plaintiff's Assault

74.     On August 24, 2018, the "Millionaire Mayhem" story[1] broke—discussing some of the above information. Shortly thereafter, Defendant Weber was contacted by the author of the report, journalist Todd Bartley ("Bartley"), and admitted he was in possession of at least one video of the assault. Defendant Weber then stated that the video would *not* be sent to MBPD.

75.     On September 28, 2018, Det. Glenn Porter of the MBPD wrote a report indicating he was notified via a request from Bartley regarding the assault of Plaintiff and others at the Atlantica Resort in March 2018. Det. Porter's report indicates that the MBPD was never informed of the assault, its filming, or its distribution on social media until Bartley's request came to them.

76.     Det. Porter and Det. Kerry Aiesi of the MBPD then called Defendant Pardoe, who told the two law enforcement officers that Defendant Weber would be the person best suited to answer their questions. Pardoe never informed these law enforcement officials that he had

---

[1] *See* Bartley, Todd, <u>Millionaire Mayhem</u>, TalkWilliamsport.com, August 24, 2018, https://talkwilliamsport.com/millionaire-baseball-mayhem-in-myrtle-beach/, a copy of which is attached hereto as Exhibit "A".

conducted his own investigation, which included interviews of Plaintiff, B.M., and Videographer #1.

77.    Defendant Pardoe therefore purposefully omitted relevant information to law enforcement officials seeking to investigate the sexual assault of a child. He did this despite MBPD describing what happened to Plaintiff as "criminal" and that they would adopt the case because it occurred in their jurisdiction.

78.    Det. Tiffany Whitmire of the MBPD then emailed Defendant Weber requesting further information.

79.    The same day, Sgt. Reeder of the Williamsport Police Department confirmed that their department did not take a report on Plaintiff's assault. Therefore, no one from LC nor WASD even contacted the local police department regarding the assault of Plaintiff.

80.    Moreover, multiple WAHS school resource officers confirmed to MBPD that they too had no knowledge of the incident. Therefore, WASD did not involve WAHS's own school resource officers in an investigation of the criminal behavior of one of their students.

81.    In September 2018, Lycoming County Assistant District Attorney Jeff Yates ("ADA Yates")—who, at this time was the lead attorney responsible for prosecuting juvenile cases in Lycoming County—informed MBPD that he too had no knowledge of Plaintiff's assault and only learned of the allegations after receiving an email from Bartley requesting a comment. ADA Yates relayed to MBPD that he spoke with Det. Weber after reading the "Millionaire Mayhem" article and, shockingly, was told by Weber that he too had no knowledge of the allegations—which is objectively false.

82.    On or about October 3, 2018, MBPD Det. Porter spoke with Defendant Weber directly. Weber admitted that he was familiar with the allegations surrounding Plaintiff's assault

because it was reported via Child Line. Weber said he received the Child Line report in mid-May of 2018; however, he did not complete a report, but "facilitated the handling of this incident along with the school," referring to WAHS. Additionally, Weber told MBPD that he did not see anything criminal with what happened in Myrtle Beach "based on Pennsylvania standards" and believed that the matter "appeared resolved".

83.     At best, Defendants Pardoe and Weber withheld vital information from law enforcement regarding what they knew about Plaintiff's assault and their subsequent "investigation" of the allegations. However, Defendant Weber knowingly provided false information to ADA Yates.

84.     Additionally, Defendant Weber's assessment of the evidence in Plaintiff's assault is indicative of his bias and discriminatory intent and/or his recklessness, gross negligence, and/or negligence with respect to his ability to objectively analyze and investigate reports of criminal sexual conduct as an agent of LC.

85.     On or about October 11, 2018, Weber sent his report and video of the assault to MBPD by regular mail, which was received by MBPD on or about October 16, 2018.

86.     As noted above, in this report, Defendant Weber asserts that: (1) in mid-May 2018 he told CYS that he would look into the matter due to his "familiarity" with the WAHS baseball program and his awareness of the annual Myrtle Beach and "what usually goes on" there; (2) he notified Defendant Pardoe of the allegations, but stated that he had no jurisdiction over the case and would only assist to make referrals "if need be"; (3) he met with Plaintiff and his mother, including the fabricated detail that Plaintiff was not harassed after video of the assault was published on social media; and (4) his ultimate assessment of the matter was that it was "clearly"

a "hazing/bullying issue" that Defendant WASD "properly handled," thus not requiring him to make any referrals whatsoever.

87.     Defendant Weber's October 2018 report further indicates that it was based on his "limited note taking and [his] memory from May 2018" as he "did not prepare a report at the time" he learned of the assault.

88.     Defendant Weber's report is completely devoid of any allegations regarding the other students assaulted in Myrtle Beach, including Male Victim #1, who was alleged to have been sodomized by B.M. at the Altantica Resort—an allegation that was received by CYS and was communicated to Defendant Weber in mid-May 2018.

89.     Defendant WASD's first official statement with respect to Plaintiff's assault and any subsequent "investigation" was not released until January 9, 2020 and makes several material misrepresentations concerning the District's response to Plaintiff's assault.

90.     WASD's statement[2] reads, in relevant part:

Near the end of the 2017-2018 school year, local law enforcement brought to the district's attention an alleged incident involving indecent and inappropriate behavior by a baseball player during the team's spring trip to Myrtle Beach, South Carolina. **The information had not been previously reported to any district administrator or employee. Once the district was contacted, a prompt investigation was completed and appropriate discipline was issued** . . . .

In addition to the district's own investigation, **the matter was investigated by outside agencies, including the Lycoming County District Attorney's office and law enforcement in Myrtle Beach**. When contacted by Myrtle Beach authorities, the high school principal immediately referred them to the district attorney's office and the district's school resource officers, who serve with the Williamsport Bureau of Police . . . .

**It is important to note that the district first became aware of this incident after law enforcement had already been contacted and a ChildLine report made**. The report to ChildLine was not duplicated by the district, as it had already been reported.

---

[2] See A true and correct copy of Defendant WASD's Statement on the "Myrtle Beach Incident," attached hereto as Exhibit "B". Upon information and belief, Defendant Holland authored all or the majority of this statement.

**The district's investigation was conducted by the high school principal, district administrators and district legal counsel**. Once it became clear which students were and were not involved in the incident, **it was apparent that the high school principal had no personal conflict of interest or personal relationships with the students involved**.

**The principal was permitted by the district's solicitor to participate in the investigation, and his actions were appropriate and thorough**. As an added measure of diligence, **a second administrator[3] also participated in the investigation**.

**The district has communicated with the families of all students involved in the incident to the full extent to which we have been able** . . . . [T]he district worked directly with the families of the students involved to provide the most comfortable and appropriate educational setting for the students following the incident, and has at all times aimed to act in the best interest of the students.

**The Williamsport Area School District does not condone inappropriate and indecent behavior**. The district has fully conducted an investigation of this incident and has transparently cooperated and participated with law enforcement officials.

91.    Defendants Pardoe, McCann and Miller—all WASD employees—knew of the allegations in March 2018 shortly after they occurred. Defendant Pardoe's own nephew was present for some or all of the criminal sexual behavior, thus making him a personally biased investigator—on top of the apparent racial bias he and others exhibited in the disparate treatment of Plaintiff and B.M. Moreover, WASD had *no communication* with Plaintiff or his mother since their meeting in late-May, 2018, and they were never informed of the breadth of information the District possessed, the ultimate outcome of the District's investigation, nor the reasoning behind said outcome.

92.    On or about February 4, 2020, the WASD School Board held a meeting wherein board member Adam Welteroth made a motion to have an unbiased third party investigate the 2018 Myrtle Beach assaults since the District remained silent for months while being subject to

---

[3] Upon information and belief, "second administrator" refers to Defendant Freed.

many Right to Know requests. His motion was not seconded by a single member of the WASD School Board.

93.     Defendants WASD and LC therefore effectively considered the matter closed without having spoken to Plaintiff in over one and a half years, holding any formal disciplinary hearings for those involved, including B.M., or involving outside law enforcement agencies.

94.     B.M. was, however, criminally charged in or around February 2021 in South Carolina for his actions in Myrtle Beach in 2018 as a result of an investigation conducted by the MBPD.

### IV.     The Cover-Up is Exposed by the PA OAG

95.     On or about May 8, 2020, recently elected LC District Attorney Ryan Gardner ("DA Gardner") referred the investigation of Plaintiff's assault and the subsequent response to it to the  Pennsylvania Office of the Attorney General ("OAG").

96.     DA Gardner referred to the events in Myrtle Beach as "criminal sexual misconduct" and indicated that "the appearance of impartiality was severely compromised due to the previous joint investigation by [WASD] administration and this Office," referring to LC DA's Office.

97.     The OAG assumed jurisdiction over the investigation of Plaintiff's assault and Defendants' cover-up of said assault on May 27, 2020.

98.     In the course and scope of this investigation, OAG agents obtained several search warrants[4] to seize and search Defendant Pardoe's' phone, Defendant Weber's phone and emails, an unredacted version of the letter George Lepley sent to Defendants Pardoe and McCann in May 2018, and any/all files and/or records pertaining to the 2018 WAHS baseball team Myrtle Beach

---

[4] *See* copies of these search warrants attached hereto as Exhibits "C", "D", and "E".

Trip. Defendant Weber and WASD Superintendent Bowers were personally served with these warrants on or about September 3, 2020. These warrants were under seal until September 2021.

99.     Prior to the application of these warrants, OAG investigators were able to inspect the file from the LC DA's Office, which was maintained by Defendant Weber. The file contained notes indicating that students were instructed to delete videos, that the school district was aware of the assaults while administrators were still in Myrtle Beach, that Defendant Pardoe himself told students to get rid of images, and that Coach Ryan Miller was also aware of the assault(s).

100.     Moreover, the OAG conducted several interviews of key witnesses, including Plaintiff, Videographer #1 and his mother, and LC DA Jeff Yates, who confirmed that Defendant Weber told him he did not know about allegations in August 2018 after the "Millionaire Mayhem" article was published.

101.     Ultimately, however, on or about July 1, 2021, the OAG ended its investigation into the cover-up without filing criminal charges without explanation.

102.     DA Gardner subsequently issued a statement announcing the OAG's conclusion was reached due to the failure of the LC District Attorney's Office to create, implement, and enforce any policies governing the conduct of county detectives—specifically, the conduct of Defendant Weber. DA Gardner claimed that those "deficiencies" were identified in January 2020 and, subsequently, policies and procedures were implemented to correct said deficiencies.

103.     Therefore, DA Gardner admitted that LC's policies and procedures were deficient to adequately ensure that its county detectives were exhibiting proper conduct within the course and scope of their employment.

104.    The OAG warrants were made publicly releasable in September of 2021. Immediately after reviewing them, DA Gardner met with Defendant Weber on or about September 28, 2021, at which point Defendant Weber claimed he was retiring from his employment with LC.

105.    Despite all of this, and the information contained in the OAG search warrants, on or about October 1, 2021, Defendant WASD issued another press release in which the District stated that it "stands by its position that it and its administrators followed all proper procedures and protocols to appropriately respond to the incident in question."

106.    Defendants WASD and LC, directly and by and through their agents, employees, administrators, staff, and/or representatives were deliberately indifferent towards the sexual abuse and hostile educational environment Plaintiff suffered thereafter.

107.    Furthermore, Defendants WASD and LC, directly and by and through their agents, employees, administrators, staff, and/or representatives exhibited a racial bias against Plaintiff in their disparate treatment of Plaintiff, who is black, and B.M., who is white. Plaintiff was treated less favorably than a white perpetrator of crimes against him.

108.    At all times relevant hereto, Defendants WASD and LC were acting by and through its employees, servants, and agents, in the operation of WAHS and LC DA's Office, and the hiring, admitting, assigning, retaining, and supervising of administrators, teachers, coaches, staff, faculty members, and law enforcement officials therein. Accordingly, the Defendants are liable vicariously and derivatively for the negligent acts and omissions of these employees, servants, and agents while engaged in the operation of WAHS and LC DA's Office and the hiring, admitting, assigning, retaining, and supervising of administrators, teachers, coaches, staff, faculty members, and law enforcement officials, including Dr. Brandon Pardoe, Roger Freed, Sean McCann, Ryan

Miller, Fred Holland, and William Weber, under theories of <u>respondeat</u> <u>superior</u>, master-servant, agency, and/or right of control.

109.   As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

110.   As a direct and proximate result of the sexual abuse by B.M.—enabled by the failures of the Defendants—and the Defendants' subsequent acts and omissions, Plaintiff suffered physical and emotional injuries, as more fully set forth in this Complaint. As a result of the abuse, dissemination of said abuse, and cover-up of said abuse via the aforementioned conduct, Plaintiff was severely mentally, psychologically, and emotionally damaged.

111.   Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. The significant emotional and psychological injuries sustained by Plaintiff dramatically transformed his personality. Throughout his life since the abuse, Plaintiff has struggled with symptoms of post-traumatic stress disorder. As a result of these problems Plaintiff has suffered extreme difficulty in interpersonal relationships, among other problems.

112.   All of the above physical, psychological, and emotional injuries were proximately caused by the negligence, carelessness, recklessness, and other tortious and outrageous acts or

omissions of the Defendants as set forth in this Complaint. Plaintiff's injuries were caused solely by the negligence of WASD, LC, and the individual Defendants as set forth more fully herein and were not caused or contributed thereto by any negligence on the part of Plaintiff.

## COUNT I
## VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
## (20 U.S.C. § 1681(a))
### *John Doe v. WASD, Pardoe, Freed, McCann, Miller, Holland and John Does 1-20*

113.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

114.    Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 *et seq.*, provides, in relevant part, that no person in the United States, shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

115.    If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment.

116.    A federal funding recipient may be held liable for the harassment of a victim when the recipient exercises substantial control over the harasser and the context in which the harassment occurs. For example, if the continued harassment occurs on school grounds, within the context of a school-related function, or otherwise while in the course and scope of an environment controlled by the federal funding recipient.

117.    While a recipient school cannot be held vicariously liable for the specific acts of sexual harassment or violence, they can instead be held liable under Title IX for their own conduct.

118.    Sexual harassment is a form of discrimination for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 *et seq.*, and Title IX proscribes harassment

with sufficient clarity to serve as a basis for a damages action. Moreover, an implied private right of action exists under Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 *et seq.*, and money damages are available in such suits.

119.    Upon information and belief, Defendant WASD is a recipient of federal education funding.

120.    As stated above, Plaintiff was in the care and custody of Defendant WASD when he was abused by a fellow student, also in the care and custody of WASD, in an environment controlled by WASD—an out-of-state athletic team trip sponsored and supervised by WASD.

121.    Plaintiff was subject to sexual abuse in the form of an indecent assault wherein a fellow student sat on his head and placed his penis on Plaintiff's face, making skin-to-skin contact with Plaintiff.

122.    WASD employees permitted this abuse to occur at a school function due to their deliberate indifference towards the supervision of Plaintiff, the perpetrator B.M., and the other children in the care and custody of WASD. The acts and omissions of Defendant WASD created an environment where this type of sexual abuse was a foreseeable consequence.

123.    Upon information and belief, Defendant WASD was made aware of Plaintiff's sexual abuse at or near the time of the abuse actually occurring in March 2018. In any event, WASD was, at the very least, notified of the sexual abuse of Plaintiff by way of a Child Line report on May 18, 2018.

124.    When informed of the specifics of the abuse and that there was proof of the abuse, documented on at least one student's phone, WASD administrators and coaches instructed students to destroy that evidence and keep quiet about what had occurred.

125.    After Plaintiff was abused, and his abuse was publicized within the WAHS community, he was subject to ridicule, name-calling, bullying, torment, and harassment from other students—harassment that was communicated to WASD.

126.    Thereafter, and in conjunction with agents and/or employees of LC, Defendant WASD failed to conduct any meaningful investigation into the sexual abuse and harassment of Plaintiff. What is more, WASD actively conspired to cover-up the abuse and harassment of Plaintiff with its inadequate investigation.

127.    Due to the sexual abuse and subsequent harassment Plaintiff endured, he was forced to transfer out of the school district.

128.    Defendant WASD's failure to investigate rises to the level of deliberate indifference by attempting to destroy and/or suppress evidence, attempting to silence witnesses, failing to meaningfully discipline B.M., failing to keep Plaintiff and his mother apprised of any actions taken within the investigation and after the conclusion of said investigation, and other acts and omissions described throughout this Complaint.

129.    The deliberate indifference, omissions, actions, and failures to act described above caused Plaintiff to suffer sexual abuse and harassment.

130.    Defendant WASD, by and through the acts of its employees, agents, servants, staff members, teachers, and coaches had a duty to protect the life, liberty, and property of Plaintiff John Doe, and because of its failure to take any precautionary measures to supervise children in their care and custody, Plaintiff suffered sexual abuse.

131.    Defendant WASD, by and through the acts of its employees, agents, servants, administrators, staff members, teachers, and coaches had a duty to protect the life, liberty, and property of Plaintiff, and because of its failure to take remedial measures with regard to the known

instances of misconduct by B.M. and other students involved in the assault of Plaintiff, Plaintiff suffered additional harassment in school.

132. Defendant WASD, by and through the acts of its employees, agents, servants, administrators, staff members, teachers, and coaches failed to comply with Title IX by failing to take *any* meaningful action with regard to prior reports and observations of inappropriate conduct and/or sexual abuse by B.M. and continued to allow B.M. to stay enrolled at WAHS as a member of the Millionaires baseball team where he, and others to whom he disseminated the video of Plaintiff's abuse, had the opportunity to harass, ridicule, bully, shame, and torment Plaintiff.

133. As a direct and proximate cause of the affirmative acts and omissions of Defendant WASD and its employees, agents, servants, staff members, teachers, and coaches that rise to such a level of deliberate indifference, Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

134. Plaintiff's injuries are severe, pervasive, and objectively offensive, and as a direct result of Defendant WASD's acts and omissions, Plaintiff experienced a complete loss of educational benefits and opportunities afforded to him.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, Pardoe, Freed, McCann, Miller, Holland, and John Does 1-20 in a sum in excess of Fifty Thousand ($50,000.00)

Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

### COUNT II
### VIOLATION OF 42 U.S.C. § 1983
*Plaintiff v. All Defendants*
**Civil Rights Conspiracy**

135.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

136.     The Defendants, acting within the scope of their employment and under color of state law, agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of his clearly established Fourteenth Amendment right to equal protection under the law.

137.     In furtherance of the conspiracy, Defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

    a.  Intentionally or with deliberate indifference failing to comply with their duty to keep minor students in their custody and care safe from harm;

    b.  Intentionally or with deliberate indifference creating an environment wherein Plaintiff was sexually assaulted;

    c.  Intentionally or with deliberate indifference creating an environment wherein Plaintiff was harassed, ridiculed, bullied, and tormented;

    d.  Instructing individuals to destroy evidence of the assault of Plaintiff;

    e.  Attempting to silence witnesses from coming forward about the assault and harassment of Plaintiff;

    f.  Failing to comply with the requirements of  63 Pa.C.S. § 6311, *et seq.*, requiring the Defendants to report allegations of child abuse to the proper authorities;

    g.  Failing to notify law enforcement officials of the assault of Plaintiff;

h.   Failing to cooperate with law enforcement officials regarding the investigation of the assault of Plaintiff;

i.   Failing to conduct an unbiased investigation into the assault of Plaintiff;

j.   Failing to keep Plaintiff and his family apprised of the status and/or outcome of the investigation;

k.   Falsifying records and/or fabricating information in official investigatory documents;

l.   Intentionally or with deliberate indifference exhibiting a racial bias against Plaintiff;

m.   Committing offenses which would violate the laws of the United States, including but not limited to 18 U.S.C. §§ 242, 249, and 1503;

n.   Committing offenses which would violate the laws of the Commonwealth of Pennsylvania, including but not limited to 18 Pa.C.S. §§ 4904, 4910, 4952, 4958, 5101, and 5301

138.   The acts and omissions by the Defendants WASD, LC, Pardoe, Freed, McCann, Miller, Holland, Weber, and John Does 1-20 were made in a willful disregard for the safety of Plaintiff and a reckless or callous indifference for his protected rights.

139.   Defendants' acts and omissions, as described above, were the direct and proximate cause of Plaintiff's injuries. Defendants knew, or should have known, that their actions and/or inactions would result in Plaintiff's grave physical, emotional, psychological and other harm.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, LC, Pardoe, Freed, McCann, Miller, Holland, Weber, and John Does 1-20 in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

**COUNT III**
**VIOLATION OF 42 U.S.C. § 1983**
*Plaintiff v. All Defendants*
**Violation of Fourteenth Amendment Equal Protection**

140.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

141.     The Fourteenth Amendment to the United States Constitution protects Plaintiff from the deprivation of life, liberty, or property, without due process of law and guarantees Plaintiff equal protection of the law. The Fourteenth Amendment requires the Defendants, including Dr. Brandon Pardoe, Roger Freed, Sean McCann, Ryan Miller, Fred Holland, William Weber, and John Does 1-20 to establish policies and practices to protect Plaintiff from known harms and known patterns of constitutional deprivations.

142.     Defendants failed, with deliberate indifference, to provide a safe custodial setting for Plaintiff, by failing to properly train, supervise, and discipline staff at WASD and LC, failing to properly investigate claims of child abuse related to students at WASD, and failing to appoint the proper individuals conduct an adequate, unbiased, and independent investigation of said abuse, as required by law. As a proximate result of Defendants' policies, practices and customs, the staff at WASD and LC, acting under color of state law, subjected Plaintiff to sexual and emotional abuse, a failure to protect from harm, and other abuses alleged in this Complaint. Defendants WASD, LC, their respective employees, and Dr. Brandon Pardoe, Roger Freed, Sean McCann, Ryan Miller, William Weber, Fred Holland, and John Does 1-20 violated Plaintiff's Fourteenth Amendment rights when subjecting him to sexual abuse and harassment, and/or endorsing the abusive environment, and/or taking no action to prevent such abuse despite their knowledge of its occurrence and of the abusive environment festering at WAHS.

143.     Defendants acted or failed to act under the color of state law, when they were required to keep minors, including Plaintiff, safe from harm.

144.     Defendants' acts and omissions as set forth in the preceding paragraphs of this Complaint shock the conscience, deprived Plaintiff of his Fourteenth Amendment right to equal protection of the laws, and caused Plaintiff grave physical, emotional, psychological and other harm.

145.     The acts and omissions by the Defendants WASD, LC, Dr. Brandon Pardoe, Roger Freed, Sean McCann, Ryan Miller, Fred Holland, William Weber and John Does 1-20 were made in a willful disregard for the safety of Plaintiff and a reckless or callous indifference for his protected rights.

146.     The acts and omissions by the Defendants WASD, LC, Dr. Brandon Pardoe,  Roger Freed, Sean McCann, Ryan Miller, Fred Holland, William Weber and John Does 1-20 as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and are therefore liable to Plaintiff under 42 U.S.C. § 1983 and the Fourteenth Amendment.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, LC, Pardoe, Freed, McCann, Miller, Holland, Weber, and John Does 1-20 in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

### ***State Law Claims***

### COUNT IV
### VICARIOUS LIABILITY
### *Plaintiff v. All Defendants*

147.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

148.    Defendants Pardoe, Freed, McCann, Miller, Holland, Weber, and John Does 1-20 (the "Individual Defendants") engaged in unpermitted, harmful, and unlawful conduct which not only facilitated the sexual abuse of Plaintiff, but also engaged in such conduct to cover-up the abuse of Plaintiff in violation of Pennsylvania State law. Said conduct was undertaken while the Individual Defendants were employees and/or agents of Defendants WASD (Pardoe, Freed, McCann, Miller, Holland, John Does 1-20) and LC (Weber), while in the course and scope of employment with Defendants WASD and LC, and/or was ratified by Defendants WASD and LC.

149.    Prior to or during the time that the Individual Defendants engaged in the conduct alleged above, Defendants WASD and LC knew, had reason to know, or were otherwise on notice of the unpermitted, harmful, and unlawful conduct of the Individual Defendants. Defendants WASD and LC failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of criminal sexual misconduct and the unlawful suppression of information related to such instances in the future by the Individual Defendants. Furthermore, at no time during the period of time alleged did Defendants WASD or LC have in place a system or procedure to supervise and/or monitor the students in their care on out-of-state athletic trips to ensure that criminal sexual misconduct did not occur; nor did Defendants WASD or LC have in place a system or procedure to supervise and/or monitor their employees, representatives, or agents to ensure that they were not suppressing information related to student criminal sexual misconduct and/or obstructing investigation into same.

150.    Defendants' WASD and LC knowing acquiescence and silence with respect to the known, or reasonably knowable, activities of the Individual Defendants constituted a course of

conduct through which acts of sexual abuse and obstruction of justice were condoned, approved, and effectively authorized.

151.    Through their failure to timely reprimand and sanction the acts referenced herein, and for all of the other reasons set forth in this Complaint including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants WASD and LC ratified said actions and, accordingly, are vicariously liable for the actions of its agents, employees, volunteers, staff members, administrators, teachers, coaches, and representatives, including the Individual Defendants.

152.    As a result of the above-described conduct, Plaintiff has suffered and will continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, LC, Pardoe, Freed, McCann, Miller, Holland, Weber and John Does 1-20 in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs

## COUNT V
## NEGLIGENCE
### *Plaintiff v. WASD, Pardoe, Freed, McCann, Miller, Holland and John Does 1-20*

153.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

154.    At all relevant times, Defendants owed a duty to maintain a safe educational, athletic, and school environment for the students at WAHS, specifically Plaintiff.

155.    At all relevant times, Defendants had a duty to protect and safeguard Plaintiff from hurt, harm, and danger while he was under their supervision.

156.    At all relevant times, Defendants occupied a position of *in loco parentis*, and was under a duty to protect Plaintiff, and to provide him with safety and supervision akin to that which would have been provided by his own parents.

157.    At all relevant times, Defendants had a duty to ensure that its employees were properly supervising students in their custody and care to protect them from the exact type of sexual abuse to which Plaintiff was subject.

158.    At all relevant times, Defendants had a duty to provide for Plaintiff's basic human needs, including the safety of his person and his educational environment.

159.    By accepting custody of the minor Plaintiff, Defendants established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury.

160.    At all relevant times, Defendants knew or should have known that their agents, employees, servants, and/or staff members were not qualified to supervise minor students in an environment where a lack of supervision created a risk of foreseeable harm to said minor students, including Plaintiff.

161.    Defendants knew, had reason to know, or was otherwise on notice of the conduct of their agents, employees, and/or staff members who failed to protect the safety of children in their school, including Plaintiff. Yet Defendants failed to take reasonable steps and failed to

implement reasonable safeguards to prevent acts of unlawful sexual abuse and to prevent or avoid placement of Plaintiff in functions or environments in which he would be endangered and abused.

162. Furthermore, at no time during the periods of time alleged did Defendants have in place a system or procedure to supervise and/or monitor its staff and students to ensure that children, including Plaintiff, were not abused.

163. Moreover, as set forth above, the incidents of abuse occurring when Plaintiff was in the care and custody of Defendants were purposefully shielded from the appropriate authorities. For years, Defendants failed to do anything to properly investigate Plaintiff's abuse or discipline any of the students and employees or staff members that not only created an environment where such abuse was permitted to occur but also who failed to properly investigate reports of Plaintiff's abuse which occurred while under their supervision. Defendants' knowing acquiescence and silence with respect to the known, or reasonably knowable, activities its students during an out-of-state athletic trip and thereafter constituted a course of conduct through which acts of sexual violence and mental torment and the violation of the sanctity of children were condoned, approved, and effectively authorized.

164. Through its failure to timely reprimand and sanction the acts referenced above, and for all of the other reasons set forth herein including, without limitation, its failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants ratified said actions and, accordingly, is vicariously liable for the actions of their employees, including Dr. Brandon Pardoe, Roger Freed, Sean McCann, Ryan Miller, Fred Holland, and John Does 1-20.

165. At all relevant times, Defendants failed to adequately and properly:

a.   Employ processes that screen out and/or prevent the hiring of incompetent employees such as Pardoe, Freed, McCann, Miller, Holland and John Does 1-20.

b.   supervise its agents, employees, servants, staff members, administrators, teachers, coaches, and/or students, including B.M., Plaintiff, Pardoe, Freed, McCann, Miller, Holland and John Does 1-20, and other individuals that knew or should have known that B.M. sexually abused Plaintiff;

c.   train its agents, employees, servants, staff members, administrators, teachers, coaches, and/or students, including B.M., Plaintiff, Pardoe, Freed, McCann, Miller, Holland and John Does 1-20, and other individuals that knew or should have known that B.M. sexually abused Plaintiff;

d.   employ policies that screen out and/or prevent the retention of employees who condone and cover-up sexual abuse;

e.   investigate employees' background and/or information it knew or should have known during the course of their employment, including that they condone and cover-up sexual abuse.

166.   The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of Defendants as set forth above and herein, consisted of *inter alia*:

a.   permitting B.M. to sexually abuse a minor student;

b.   permitting B.M. to engage in illegal sexual conduct with another student within the course and scope of a school-related function while both B.M. and Plaintiff were in the care and custody of Defendants;

c.  permitting and/or allowing an environment in which B.M. violated or engaged in conduct that would constitute violations of Pennsylvania criminal statutes prohibiting Indecent Assault (18 Pa. C.S.A. § 3126), and/or Indecent Exposure (18 Pa. C.S.A. § 3127), and/or Sexual Extortion (18 Pa. C.S.A. § 3133), and/or Sexual Abuse of Children (18 Pa. C.S.A. § 6312), and/or Transmission of Sexually Explicit Images by a Minor (18 Pa. C.S.A. § 6321), constituting negligence *per se*;

d.  permitting and/or allowing an environment in which the Individual Defendants violated or engaged in conduct, in concert with others, that would constitute violations of Pennsylvania criminal statutes prohibiting Unsworn Falsification (18 Pa.C.S. § 4904), and/or Tampering with Evidence (18 Pa.C.S. § 4910), and/or Intimidation of Witnesses (18 Pa.C.S. § 4952), and/or Obstructing Administration of Law (18 Pa.C.S. § 5101), and/or Official Oppression (18 Pa.C.S. § 5301), constituting negligence *per se*;

e.  failing to properly and adequately supervise and discipline its employees and/or agents to prevent the sexual abuse that occurred to Plaintiff;

f.  failing to adopt, enforce, and/or follow adequate policies and procedures for the protection and reasonable supervision of children who attend Defendants' school, including Plaintiff, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

g.  failing to implement, enforce, and/or follow adequate protective and supervisory measures for the protection of students at Defendants' school, including Plaintiff;

h.   creating an environment that facilitated sexual abuse of students, including Plaintiff;

i.   failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by other students, including B.M.;

j.   violation of duties imposed by Restatement (Second) of Torts, §§ 302B, 314, 315, 317, 323, 324A, 343, 344 and 371 and Restatement (Second) of Agency § 213 as adopted in Pennsylvania;

k.   failing to warn Plaintiff of the risk of harm posed by B.M. after Defendants knew or should have known of such risk;

l.   failing to provide Plaintiff with any assistance in coping with the injuries sustained;

m.   ratifying B.M.'s conduct;

n.   failing to warn Plaintiff of the risk of harm that Plaintiff may suffer as a result of further contact with B.M.;

o.   failing to warn or otherwise make reasonably safe the property which Defendants controlled, leading to the harm of Plaintiff;

p.   failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, the Pennsylvania Department of Education, authorities within Defendants' school, and/or other authorities of harmful acts to children;

q.   failing to report B.M.'s harmful acts to authorities within Defendants' school and/or other authorities, including but not limited to the MBPD;

r.   failing to implement adequate and proper policies and/or by-laws regarding sexual abuse and/or harassment and/or violating its own policies and/or by-laws regarding sexual abuse and/or harassment;

s.   failing to implement adequate and proper policies and/or by-laws regarding use of computers, cell phones, social media and communication by students and/or violating its own policies and/or by-laws regarding use of computers, cell phones, social media and communication by students;

t.   violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), and/or the Educator Discipline Act, 24 P.S. §§ 2070.1 *et seq.* constituting negligence *per se*;

u.   ignoring, concealing, or otherwise mitigating the seriousness of the known danger that B.M. posed;

v.   failing to prevent the sexual abuse that was committed by B.M. on Plaintiff;

w.   allowing B.M. to remain at school after knowing that he sexually abused a student and disseminated video depictions of that abuse on social media;

x.   failing to properly supervise and/or discipline its employees who created an environment in which B.M.'s abuse of Plaintiff was permitted to take place;

y.   failing to adequately and properly train its employees regarding sexual abuse of students; and

z.   negligently managing and/or operating Defendants' school.

167.   As a proximate and direct result of Defendants' negligence and/or reckless conduct described herein, Plaintiff was harmed as a result and has sustained physical and emotional

injuries, embarrassment, mental anguish, pain and suffering, and loss of enjoyment of life and life's pleasures.

168.    Plaintiff has been and will likely, into the future, be caused to incur medical expenses and Plaintiff may likely incur a loss of earning capacity in the future.

169.    Defendants knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk for which Plaintiff is entitled to and hereby seeks punitive damages pursuant to the requirements of Pennsylvania law.

170.    Defendants' actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Plaintiff for which Plaintiff is entitled to and hereby seeks punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, Pardoe, Freed, McCann, Miller, Holland, and John Does 1-20 in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

### COUNT VI
### NEGLIGENCE
### *Plaintiff v. LC, Weber, and John Does 1-20*

171.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

172.    At all relevant times, Defendant Weber was assigned to the LC DA's Office as an agent, employee, servant, and/or staff member of LC.

173.    At all relevant times, Defendant Weber, as a law enforcement agent of LC, was a mandated reporter pursuant to 63 Pa.C.S. § 6311, *et seq.*

174.    At all relevant times, Defendants LC and Weber owed a duty to investigate reports of criminal activity, including sexual abuse, and, specifically, the sexual abuse of Plaintiff.

175.    Defendant LC knew, had reason to know, or were otherwise on notice of the conduct of Weber, who failed to investigate and/or refer for investigation reports of child sexual abuse, including Plaintiff. Yet Defendant LC failed to take reasonable steps and failed to implement reasonable safeguards to prevent Weber from dereliction of his duties as a law enforcement officer tasked with reporting and investigating allegations of child sexual abuse.

176.    Furthermore, at no time during the periods of time alleged did Defendant LC have in place a system or procedure to supervise and/or monitor its employees, agents, and/or staff to ensure allegations of child sexual abuse were reported and investigated.

177.    Moreover, as set forth above, the abuse of Plaintiff was purposefully shielded from the appropriate authorities. For years, Defendant LC failed to do anything to properly investigate Plaintiff's abuse or discipline any of the students and employees or staff members that not only created an environment where such abuse was permitted to occur but also who conspired to cover-up the abuse that occurred while under their supervision. Defendant's knowing acquiescence and silence with respect to the known, or reasonably knowable, activities its agents and/or employees who concealed information from law enforcement and conspired with school administrators to cover-up Plaintiff's sexual abuse and subsequent harassment, constituted a course of conduct through which acts of sexual violence and mental torment and the violation of the sanctity of children were condoned, approved, and effectively authorized.

178.    Through its failure to timely reprimand and sanction the acts referenced above, and for all of the other reasons set forth herein including, without limitation, its failure to take the steps

necessary to prevent the occurrence of such reprehensible acts, Defendant LC ratified said actions and, accordingly, is vicariously liable for the actions of their employees, including Weber.

179.   At all relevant times, Defendants failed to adequately and properly:

 a. Employ processes that screen out and/or prevent the hiring of incompetent employees such as Weber;

 b. supervise its agents, employees, servants, and/or staff members, including Weber, and other individuals that knew or should have known that B.M. sexually abused Plaintiff;

 c. train its agents, employees, servants, and/or staff members, including Weber, and other individuals that knew or should have known that B.M. sexually abused Plaintiff;

 d. employ policies that screen out and/or prevent the retention of employees who condone and cover-up sexual abuse;

 e. investigate employees' background and/or information it knew or should have known during the course of their employment, including that they condone and cover-up sexual abuse.

180.   The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of Defendants as set forth above and herein, consisted of *inter alia*:

 a. failing to report allegations of sexual abuse pursuant to 63 Pa.C.S. § 6311, *et seq*.

 b. failing to open an investigative file on an allegation of child sexual abuse;

c.   failing to generate any written reports on an allegation of child sexual abuse at or around the time the allegation was made;

d.   failing to contact and/or coordinate with outside law enforcement agencies regarding an allegation of child sexual abuse;

e.   failing to inform any prosecuting authority of an allegation of child sexual abuse;

f.   permitting and/or allowing an environment in which Weber violated or engaged in conduct, in concert with others, that would constitute violations of Pennsylvania criminal statutes prohibiting Unsworn Falsification (18 Pa.C.S. § 4904), and/or Tampering with Evidence (18 Pa.C.S. § 4910), and/or Intimidation of Witnesses (18 Pa.C.S. § 4952), and/or Obstructing Administration of Law (18 Pa.C.S. § 5101), and/or Official Oppression (18 Pa.C.S. § 5301), constituting negligence *per se*;

g.   failing to properly and adequately supervise and discipline its employees to prevent the above described unpermitted, harmful, and unlawful conduct;

h.   failing to adopt, enforce, and/or follow adequate policies and procedures for the protection and reasonable supervision of agents and/or employees, including Weber, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

i.   creating an environment that facilitated dereliction of duties as described above and throughout this Complaint;

j.    failing to adopt, enforce and/or follow policies and procedures to protect minors from unpermitted, harmful, and unlawful conduct on the part of Defendant's agents and/or employees;

k.    violation of duties imposed by Restatement (Second) of Torts, §§ 302B, 314, 315, 317, 323, 324A, 343, 344 and 371 and Restatement (Second) of Agency § 213 as adopted in Pennsylvania;

l.    failing to warn Plaintiff of the risk of harm posed by Weber after Defendants knew or should have known of such risk;

m.    failing to provide Plaintiff with any assistance in coping with the injuries sustained;

n.    ratifying B.M's conduct;

o.    failing to adopt, enforce and/or follow policies and procedures to communicate with victims of crime and/or utilize victim assistance programs or agencies to do so;

p.    failing to warn Plaintiff of the risk of harm that Plaintiff may suffer as a result of further contact with B.M.;

q.    failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, Office of Children and Youth, the Pennsylvania Department of Education, and/or other authorities of harmful acts to children;

r.    failing to report B.M.'s harmful acts to authorities both within LC and/or other authorities, including but not limited to the MBPD;

s.    failing to implement adequate and proper policies and/or by-laws regarding sexual abuse and/or harassment and/or violating its own policies and/or by-laws regarding sexual abuse and/or harassment;

t.    failing to implement adequate and proper policies and/or by-laws regarding the recognition of criminal offenses, the retention and/or spoliation of evidence, interviewing witnesses, contacting and cooperating with victims of crime, contacting and cooperating with outside law enforcement agencies when necessary, and other functions essential to law enforcement and/or violating its own policies and/or by-laws regarding use of computers, cell phones, social media and communication by students;

u.    violating the requirements of Pennsylvania's Child Protective Services Law, 23 § 6311(a) and (b), and/or the Educator Discipline Act, 24 P.S. §§ 2070.1 *et seq.* constituting negligence *per se*;

v.    ignoring, concealing, or otherwise mitigating the seriousness of the known danger that B.M. posed;

w.    failing to investigate the sexual abuse that was committed by B.M. on Plaintiff;

x.    failing to take any law enforcement action against B.M. knowing that he sexually abused a student and disseminated video depictions of that abuse on social media;

y.    failing to adequately and properly train its employees regarding sexual abuse of minors; and

z.    negligently managing and/or operating its county detectives, including Weber.

181.    As a proximate and direct result of Defendants' negligence and/or reckless conduct described herein, Plaintiff was harmed as a result and has sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering, and loss of enjoyment of life and life's pleasures.

182.    Plaintiff has been and will likely, into the future, be caused to incur medical expenses and Plaintiff may likely incur a loss of earning capacity in the future.

183.    Defendants knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk for which Plaintiff is entitled to and hereby seeks punitive damages pursuant to the requirements of Pennsylvania law.

184.    Defendants' actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Plaintiff for which Plaintiff is entitled to and hereby seeks punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants LC, Weber, and John Does 1-20 in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT VII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *Plaintiff v. All Defendants*

185.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

186.    Defendants by and through their contact with Plaintiff, as described above, negligently and/or recklessly committed multiple acts of extreme and outrageous conduct which

caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Plaintiff, which also manifested in physical injuries to Plaintiff as set forth above in an extreme, outrageous, and harmful manner.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, LC, Pardoe, Freed, McCann, Miller, Holland, Weber, and John Does 1-20 in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *Plaintiff v. All Defendants*

187.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

188.    Defendants by and through their contact with Plaintiff, as described above, intentionally committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and harm to Plaintiff, which also manifested in physical injuries to Plaintiff as set forth above, in an extreme, outrageous and harmful manner.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, LC, Pardoe, Freed, McCann, Miller, Holland, Weber, and John Does 1-20 in a sum in excess of Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT IX
## NEGLIGENT FAILURE TO RESCUE
### *Plaintiff v. All Defendants*

189.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

190.    The negligence and recklessness of Defendants in directly and proximately causing the injuries and damages to Plaintiff described herein, include:

      a.    failing to take reasonable and necessary steps to rescue the Plaintiff after placing him in a position of harm;

      b.    failing to exercise reasonable and necessary steps to prevent further harm after rendering Plaintiff in danger of further harm;

      c.    failing to take reasonable and necessary steps to give aid or assistance to Plaintiff after rendering him in danger of further harm;

      d.    failing to take reasonable steps to obtain aid or assistance for the Plaintiff after rendering him danger of further harm;

      e.    failing to take reasonable and necessary steps to prevent the delay in the appropriate care of Plaintiff; and

      f.    violation of the duties set forth in Restatement (Second) of Torts, Sections 314A & 322, as adopted in Pennsylvania.

191.    As a proximate and direct result of Defendant's breaches described in the preceding paragraph, Plaintiff sustained psychological and physical harms and injuries as described above.

192.    The aforementioned incidents resulted from the negligence, recklessness and/or intentional acts of Defendants and was due in no manner whatsoever to any act or failure to act on part of Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, LC, Pardoe, Freed, McCann, Miller, Holland, Weber, and John Does 1-20 in a sum in excess of Fifty Thousand

($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

**COUNT X**
**NEGLIGENCE *PER SE***
***Plaintiff v. All Defendants***

193.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint the same as if fully set forth hereinafter.

194.    Defendants, individually, derivatively, and in concert with each other, engaged in the aforementioned conduct, which would constitute violations of Pennsylvania criminal statutes prohibiting Unsworn Falsification (18 Pa.C.S. § 4904), and/or Tampering with Evidence (18 Pa.C.S. § 4910), and/or Intimidation of Witnesses (18 Pa.C.S. § 4952), and/or Obstructing Administration of Law (18 Pa.C.S. § 5101), and/or Official Oppression (18 Pa.C.S. § 5301).

195.    Defendants' violations constitute negligence *per se* under Pennsylvania law.

196.    Defendants' negligent, reckless, and/or intentional failures to report criminal acts allowed B.M. to disseminate videos of his abuse of Plaintiff, causing continuing harm to Plaintiff and the injuries and damages described above.

197.    Defendants' negligent, reckless, and/or intentional failures in investigating or responding to Plaintiff's allegations of abuse caused Plaintiff the injuries and damages described above.

198.    Such failure on part of Defendants was reckless, intentional, knowing, grossly negligent, deliberately and recklessly indifferent, outrageous, malicious, and/or was a reckless and conscious disregard for the safety of Plaintiff.

199.    Defendants' failures to report pursuant to their legal obligation under either Pennsylvania's Child Protective Services Law (PCPSL), 23 § 6311(a) and (b) *et seq*. and/or the

Educator Discipline Act, 24 P.S. §§ 2070.1 *et seq.* as well as the conduct which would violate the criminal laws of the Commonwealth of Pennsylvania proximately caused the harm to Plaintiff and the injuries and damages described above.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, LC, Pardoe, Freed, McCann, Miller, Holland, Weber, and John Does 1-20 in a sum more than Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

### COUNT XI
### CIVIL CONSPIRACY
*Plaintiff v. All Defendants*

200.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

201.    As outlined above and upon information and belief, Defendants WASD, LC, and their respective employees, agents, staff, administrators, directors, teachers, coaches all knowingly and willfully conspired and agreed among themselves to misrepresent to and conceal from the public, including, but not limited to Plaintiff and his family, information relating to his and other students' sexual abuse and/or their investigation of and response to such abuse and/or their intent regarding consequences to be faced by B.M. and others who they knew participated in the abuse of Plaintiff and other students. This conspiracy continues to this day as all Defendants have claimed privately and publicly that their investigation of and response to Plaintiff's abuse was prompt, appropriate, and thorough.

202.    The Defendants conspired to keep the abuse of Plaintiff and other WAHS students from the public, as well as appropriate law enforcement authorities. Instead of informing the public, Plaintiff, and/or appropriate law enforcement authorities about such instances of abuse, Defendants intentionally and falsely told Plaintiff, the public, and appropriate law enforcement

authorities that what occurred was merely "indecent" and/or "inappropriate" rather than criminal sexual behavior.

203.    Further, the Defendants likewise conspired to keep their investigation of and response to the abuse of Plaintiff hidden from the public and appropriate law enforcement authorities. Defendants conspired to: destroy evidence; silence witnesses; make back-room deals to protect perpetrators of abuse rather than Plaintiff, the innocent victim of a sexual assault; falsify records and/or fabricate information contained in official law enforcement documents; and other activities described throughout this Complaint in an effort to minimize the seriousness of the abuse and any corresponding embarrassment or reputational harm Defendants would face as a result of the abuse. Instead of informing the public, Plaintiff, and/or appropriate law enforcement authorities about such instances of abuse, Defendants intentionally and falsely told Plaintiff, the public, and appropriate law enforcement authorities, among other things, that Defendants *first* learned of the abuse via local law enforcement, that the matter was investigated by outside agencies including the LC DA's Office, that the individuals conducting the investigation were not biased, that Defendants had communicated with families of all students involved, and that the conduct of B.M. and other students towards Plaintiff was not condoned.

204.    In furtherance of said conspiracy and agreement, Defendants engaged in fraudulent representations, omissions and/or concealment of facts, acts of cover-up and statements. Defendants were purely motivated in this regard for the purposes of protecting their own interests at the expense of innocent children, including Plaintiff.

205.    All of the actions of Defendants set forth in the preceding paragraphs were in violation of the rights of Plaintiff and committed in furtherance of the aforementioned conspiracies and agreements. Moreover, each of the aforementioned individuals lent aid and encouragement,

and knowingly financed, ratified and/or adopted the acts of the other. As a proximate result of the wrongful acts herein alleged, Plaintiff has suffered significant damage as outlined above.

206.    These acts constituted malicious conduct which was carried on the Defendants with willful and conscious disregard for Plaintiff's rights with the intention of willfully concealing incidents of abuse and harassment, and was despicable conduct by any measure that subjected Plaintiff to cruel and unjust hardship, so as to justify an award of exemplary and punitive damages. Accordingly, punitive damages should be awarded against Defendants to punish them and deter other such persons from committing such wrongful and malicious acts in the future.

WHEREFORE, Plaintiff demands judgment against Defendants WASD, LC, Pardoe, Freed, McCann, Miller, Holland, Weber, and John Does 1-20 in a sum more than Fifty Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

Dated: _____9/6/22_____

                                        **LAFFEY, BUCCI & KENT, LLP**


BY:    _____
                                        Brian D. Kent, Esq.
                                        Gaetano D'Andrea, Esq.
                                        Michael J. McFarland, Esq.
                                        Jillian P. Roth, Esq.
                                        LAFFEY, BUCCI & KENT, LLP
                                        1100 Ludlow Street, Suite 300
                                        Philadelphia, PA 19107
                                        (T): (215) 399-9255
                                        (E): bkent@lbk-law.com
                                             gdandrea@lbk-law.com
                                             mmcfarland@lbk-law.com
                                             jroth@lbk-law.com

**STAPP LAW, LLC**

BY:      */s/* Gregory A. Stapp
              Gregory A. Stapp, Esq.
              STAPP LAW, LLC
              153 West 4th Street, Suite 6
              Williamsport, PA 17701
              (T): (570) 326-1077
                   (570) 651-9420
              (E): gstapp@stapplaw.net

              *Attorneys for Plaintiff*