# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN DOE,

        Plaintiff,

    v.

WILLIAMSPORT AREA SCHOOL
DISTRICT, LYCOMING COUNTY,
DR. BRANDON PARDOE, ROGER
FREED, SEAN McCANN, RYAN
MILLER, FRED A. HOLLAND, ESQ.,
WILLIAM WEBER, in his individual
and official capacity, and JOHN and
JANE DOEs #1-#20 (fictitious names),
whose true identities are currently
unknown to Plaintiffs,

        Defendants.

No. 4:22-CV-01387

(Chief Judge Brann)

## MEMORANDUM OPINION

### APRIL 27, 2023

More frequently than the Court would have it, it must address cases that "arise from unsettling facts presented by sympathetic plaintiffs"—students who suffered sexual abuse in educational settings.[1] Unfortunately, this is one of those cases.

Plaintiff John Doe sues numerous Defendants for their allegedly tortious and unconstitutional actions arising from what appears to be a hazing incident involving the Williamsport Area High School's ("WAHS") baseball team, the Williamsport

---

[1] *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (en banc).

Millionaires while in in Myrtle Beach, South Carolina. While attending an annual baseball tournament in Myrtle Beach, Doe's teammates repeatedly directed racial slurs at Doe, a black student, and B.M., one of Doe's teammates, sexually assaulted him. The students were left unsupervised by Defendants Dr. Brandon Pardoe, WAHS's principal (whose nephew then played for the Millionaires); Sean McCann, WAHS's athletic director; and Ryan Miller, WAHS's head baseball coach.

One of Doe's teammates took a video of the assault. Pardoe, McCann, and Miller attempted to destroy the video, but it was too late. The video was disseminated on social media to other WAHS students. As a result, Doe suffered constant harassment and humiliation from his peers. It did not stop there. Eventually someone reported the incident. That report made its way to Defendant William Weber, then a detective working for the Lycoming County District Attorney's Office. Weber, whose son formerly played for the Millionaires, undertook to personally investigate the incident.

Weber and the other Defendants allegedly swept the incident under the rug, intentionally withholding information, such as the video of the assault, from the Myrtle Beach Police Department ("MBPD"). During the investigation, Defendant Fred A. Holland, the solicitor for Defendant Williamsport Area School District ("WASD") became involved with the investigation. Eventually, Weber concluded that WAHS appropriately handled the situation and closed his investigation. The

only consequent discipline was a two-game suspension of B.M. and the student who took the video.

That would not be the end of this ill-fated saga. The story of Doe's assault then found its way to the press. The MBPD subsequently became involved and contacted Defendants for information. Attorneys at the Lycoming County District Attorney, including the prosecutor charged with investigating and prosecuting juvenile offenses, then learned about the incident for the first time. Defendants purposefully omitted relevant information in their communications with both local and Myrtle Beach law enforcement personnel. Weber claimed the matter was resolved as no crimes had been committed, despite B.M.'s admission to Weber that he touched Doe with his genitalia. WASD issued a public statement claiming that the matter was handled appropriately and there were no personal conflicts, despite both Pardoe and Weber's connections to the Millionaires.

Eventually, the Lycoming County District Attorney referred the case to the Office of the Attorney General of Pennsylvania ("OAG"). OAG investigated the matter and executed search warrants for Weber's and Pardoe's phones and emails, but later closed the investigation without explanation. The District Attorney explained that the investigation was closed because of its failure to properly supervise its detectives, a deficiency that it subsequently addressed by issuing new policies.

Doe now sues Pardoe, McCann, former WAHS vice-principal Roger Freed,[2] Miller and WASD (collectively, the "WASD Defendants"), as well as Holland, Weber, and Lycoming County. He alleges federal constitutional claims and Pennsylvania-law tort claims. Defendants move to dismiss Doe's Complaint because it fails to state a claim. For the reasons that follow, the Court grants Defendants' motions in part.

## I.      BACKGROUND

### A.      Underlying Facts

#### 1.      The Myrtle Beach Incident

Doe is an adult male who formerly attended WAHS, which is operated by WASD.[3] In March 2018, he was a freshman member of the Millionaires.[4] That month, the Millionaires attended a baseball tournament in Myrtle Beach, South Carolina.[5] Miller, Pardoe, and McCann accompanied the team.[6] Pardoe is WAHS's principal, Freed formerly served as its assistant principal, McCann as its athletic director, and Miller as its head baseball coach.[7] Miller reserved rooms at a local hotel

---

[2]   Freed filed an Answer to Doe's Complaint is therefore not addressed in this memorandum and the accompanying Order.

[3]   Compl., Doc. 1 ¶¶ 6-7.

[4]   *Id.* ¶ 22.

[5]   *Id.* ¶ 23.

[6]   *Id.* ¶ 25.

[7]   *Id.* ¶¶ 10-13.

for himself and the team, while Pardoe and McCann made alternative arrangements at rental houses.[8]

One evening, Pardoe, McCann, and Miller took several of the players to a party in another town, leaving the rest of the team at the hotel apparently without supervision.[9] That same evening, the remaining members of the team began to use racial slurs to refer to Doe, who is black.[10] One of Doe's teammates, B.M. assaulted Doe by placing his genitals on Doe's face.[11] Another student "was held down by multiple teammates while B.M. sodomized him with a television remote."[12] A third student captured the assaults on video.[13] Pardoe, Miller, and McCann later learned of the videos and instructed the students to delete any records of them while the team was still in Myrtle Beach.[14] But students had already shared the videos on social media and continued to do so once the team returned to Williamsport.[15] Other WAHS students began to ridicule Doe based on the video.[16] Doe was then removed from the baseball team.[17]

---

[8]   *Id.* ¶¶ 27-29.
[9]   *See id.* ¶ 30.
[10]  *Id.* ¶ 32.
[11]  *Id.* ¶ 31.
[12]  *Id.* ¶ 33.
[13]  *Id.* ¶ 34.
[14]  *Id.* ¶ 36.
[15]  *Id.* ¶¶ 37-38.
[16]  *Id.* ¶ 40.
[17]  *Id.* ¶ 41.

### 2.     WASD and Lycoming County's Investigation

In May 2018, a report was made to Lycoming County Children and Youth Services ("CYS") regarding the Myrtle Beach assault, which CYS forwarded to Weber, who in turn notified Pardoe.[18] Weber told CYS he would look into the matter personally as he had "familiarity" with the team and "was aware of the trip and what usually goes on during the annual trip" based on his past attendance at the tournament to watch his son play for the Millionaires.[19] Weber explained he would make referrals to local law enforcement in Myrtle Beach if he deemed it necessary.[20] He obtained one of the videos of the assaults but did not inform the prosecutors at the Lycoming County District Attorney of the assault.[21]

Later in May 2018, Doe and his family contacted Freed to inquire about the investigation into the assault.[22] Freed denied any knowledge of it.[23] Doe's family later met Pardoe, Weber, and Freed.[24] Doe described what happened to him and was shown the video, in which he identified himself.[25] Weber later falsely reported that Doe "did not feel that the video of his assault was passed around much as nobody had mentioned it to [him] during school."[26] He then concluded that the incident was

---

[18]   *Id.* ¶¶ 42-43. The record is silent as to who made the May 2018 report.
[19]   *Id.* ¶¶ 44-45
[20]   *Id.* ¶ 45.
[21]   *Id.* ¶ 47.
[22]   *Id.* ¶ 49.
[23]   *Id.*
[24]   *Id.* ¶ 50.
[25]   *Id.*
[26]   *Id.* ¶ 51.

a "hazing/bullying issue that the school properly handled" and there was accordingly "no referral to be made."[27] Weber's notes included an admission to the assault from B.M.[28] WAHS eventually suspended B.M. for two games.[29]

Pardoe later met with the student who took the video of the assaults.[30] WAHS suspended that student for two games as well.[31] Pardoe met with both the student and his mother and asked that the student's mother not communicate with anyone about the incident, told her that the case would not be advancing, and apologized for having to suspend her son for two games.[32] Pardoe then informed the superintendent of WASD that the investigation into the Myrtle Beach incident was underway, twelve days after he received the CYS report.[33] Pardoe informed the superintendent that he met with the student who took the video and then suggested that Holland be present for any meetings with B.M., as B.M. had engaged an attorney.[34] B.M.'s attorney threatened a civil action against WAHS if B.M. was scapegoated as the Doe's sole assailant.[35] WASD and B.M. then had several meetings through counsel.[36]

---

[27]   *Id.* ¶ 52.
[28]   *Id.* ¶ 53.
[29]   *Id.* ¶ 68.
[30]   *Id.* ¶ 55.
[31]   *Id.*
[32]   *Id.* ¶ 56.
[33]   *Id.* ¶ 57.
[34]   *Id.* ¶ 58.
[35]   *Id.* ¶ 60.
[36]   *Id.* ¶¶ 60-66.

### 3.     The "Millionaire Mayhem" Story

After facing months of humiliation and ridicule from his peers stemming from the Myrtle Beach assault, Doe finished his freshman year and left WAHS.[37] Following Doe's departure, in August 2018, a local journalist published an article detailing the Myrtle Beach incident under the headline: "Millionaire Baseball Mayhem in Myrtle Beach."[38] The journalist contacted Weber, who confirmed his possession of one of the videos of the assault, which he stated would not be sent to the Myrtle Beach Police Department ("MBPD").[39] The journalist had also contacted the MBPD and learned that MBPD personnel were never informed of the assault.[40]

In response, the MBPD contacted Pardoe, who referred it to Weber without providing any additional information.[41] A Williamsport police officer told the MBPD that the Williamsport police had never taken a report of the incident.[42] Several school resource officers stationed at WAHS and Lycoming County Assistant District Attorney Jeffrey Yates, who was responsible for the prosecution of juvenile crimes, also learned of the incident for the first time when contacted by MBPD or through reading the Millionaire Mayhem article.[43]

---

[37]  *Id.* ¶ 67.
[38]  *Id.* ¶ 74; Millionaire Baseball Mayhem in Myrtle Beach, Doc. 1-2.
[39]  Compl., Doc. 1 ¶ 74.
[40]  *Id.* ¶ 75.
[41]  *Id.* ¶ 76.
[42]  *Id.* ¶ 79.
[43]  *Id.* ¶¶ 80-81.

When MBPD contacted Weber, he told them that he was aware of the assault and did not complete a report.[44] Instead, he explained that he "facilitated the handling of this incident along with [WAHS]" and "did not see anything criminal with what happened in Myrtle Beach based on Pennsylvania standards, and believed the matter appeared resolved."[45]

In January 2019, WASD released a statement regarding the assault, in which it acknowledged that there was an "an alleged incident involving indecent and inappropriate behavior by a baseball player during the team's spring trip to Myrtle Beach."[46] The statement explained that the allegation "had not been previously reported to any [WASD] administrator or employee," but "[o]nce [WASD] was contacted, a prompt investigation was completed and appropriate discipline was issued."[47]

The statement identified the outside investigators as the Lycoming County District Attorney's Office and law enforcement in Myrtle Beach.[48] As for WASD's investigation, it explained that Pardoe, Holland, and other WASD administrators investigated the incident, and that "it was apparent that the high school principal had no personal conflict of interest or personal relationships with the students

---

[44]  *Id.* ¶ 82.
[45]  *Id.*
[46]  *Id.* ¶ 90; WASD Statement, Doc. 1-3.
[47]  Compl., Doc. 1 ¶ 90.
[48]  *Id.*

involved."[49] The statement specifically noted that Holland permitted Pardoe to participate in the investigation and that Pardoe's actions were "appropriate and thorough."[50]

### 4.    The Pennsylvania Attorney General Investigation

In May 2020, the Lycoming County District Attorney referred the investigation into Doe's assault to the Office of the Attorney General of the Commonwealth of Pennsylvania ("OAG").[51] The OAG obtained search warrants for Pardoe's and Weber's phones and emails, among other documents.[52] After investigating further, the OAG ultimately ended its investigation without explanation.[53] The District Attorney issued a statement attributing the end of the OAG's investigation to the District Attorney's own failure "to create, implement, and enforce any policies governing the conduct of county detectives—specifically, the conduct of Defendant Weber."[54]

### B.    Procedural History

Doe brings several claims against Defendants arising out of the above events. He alleges that: the WASD Defendants and Holland violated Title IX through their deliberate indifference to his harassment (Count I)[55] and all Defendants violated

---

[49]   *Id.*
[50]   *Id.*
[51]   *Id.* ¶ 95.
[52]   *Id.* ¶ 98.
[53]   *Id.* ¶¶ 101-02.
[54]   *Id.* ¶ 103.
[55]   *Id.* ¶¶ 113-34.

violate his rights under the Equal Protection Clause of the Fourteenth Amendment (Counts III) and conspired to violate his Fourteenth Amendment rights (Count II).[56]

Doe also brings state-law claims, alleging that: the WASD Defendants and Holland were negligent (Count V); Lycoming County and Weber were negligent (Count VI)[57]; all Defendants negligently inflicted emotional distress ("NIED") on Doe (Count VII)[58]; all Defendants intentionally inflicted emotional distress ("IIED") on Doe (Count VIII)[59]; all Defendants negligently failed to rescue Doe (Count IX)[60]; all Defendants were negligent *per se* (Count X)[61]; all Defendants conspired to conceal B.M.'s acts through fraudulent misrepresentations (Count XI)[62]; and Lycoming County and WASD are vicariously liable for their respective employees' tortious acts (Count IV)[63]. Doe seeks compensatory damages of fifty thousand dollars, punitive damages, and costs.

---

[56] *Id.* ¶¶ 135-39 (Count II—civil rights conspiracy), 140-46 (Count III—section 1983 equal protection violation).
[57] *Id.* ¶¶ 147-52.
[58] *Id.* ¶¶ 153-70.
[59] *Id.* ¶¶ 187-88.
[60] *Id.* ¶¶ 189-92.
[61] *Id.* ¶¶ 193-99.
[62] *Id.* ¶¶ 200-06.
[63] *Id.* ¶¶ 147-52.

All Defendants aside from Freed now move to dismiss various Counts in Doe's Complaint.[64] Their motions have been fully briefed and are ripe for disposition. For the reasons below, the Court grants their motions in part.[65]

## II.    LAW

Under Rule 12(b)(6) the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the Supreme Court of the United States' landmark decisions *Bell Atlantic Corp. v. Twombly*[66] and *Ashcroft v. Iqbal*,[67] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[68]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3)

---

[64] Holland MTD, Doc. 22; Lycoming Cnty. MTD, Doc. 34; WASD MTD, Doc. 26; Weber MTD, Doc. 29.
[65] For the most part, Defendants' moving papers seek the dismissal of all claims against each moving Defendant. But they do not address some of Doe's claims in their briefs. The Court will only address the dismissal of claims that Defendants have briefed. If they seek dismissal of other claims that they failed to brief, they may do so through a separate motion.
[66] 550 U.S. 544 (2007).
[67] 556 U.S. 662 (2009).
[68] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

"assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[69]

## III.    ANALYSIS

### A.    Doe's Title IX Claim

Doe brings Count I, his Title IX claim, against the WASD Defendants and Holland.[70] The individual WASD Defendants and Holland move to dismiss the Title IX claim on the same grounds: that Title IX is not an appropriate vehicle to sue individual school employees.[71] Doe agrees and concedes that Count I should be dismissed against Pardoe, McCann, Miller, and Holland.[72] Accordingly, the Court will dismiss Count I against the WASD Defendants and Holland.

### B.    Civil Rights Claims

Doe brings Count II, a section 1983 claim premised on Defendants' alleged violation of his Fourteenth Amendment right to equal protection, against all Defendants.[73] He predicates his Fourteenth Amendment claim on the allegedly differential treatment he received as a black student complaining of abuse.[74] The

---

[69] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[70] Compl., Doc. 1 ¶¶ 113-34.

[71] *See* Holland MTD Br., Doc. 23 at 7; WASD MTD Br., Doc. 33 at 9.

[72] Doe Opp. to WASD MTD, Doc. 53-1 at 14 ("Plaintiff agrees that Count I should be dismissed against Defendants Pardoe, McCann, and Miller, but should not be dismissed against the institutional Defendant WASD."); Doe Opp. to Holland MTD, Doc. 43-1 at 9 ("Plaintiff agrees that Count I should be dismissed against Defendant Holland, but should not be dismissed against the institutional Defendant WASD.").

[73] Compl., Doc. 1 ¶¶ 140-46

[74] Doe Opp. to WASD MTD, Doc. 53-1 at 14-15.

individual WASD Defendants challenge the sufficiency of Doe's Fourteenth Amendment claim against them because he fails to allege "that a student of a different race was assaulted and treated differently by the District Defendants."[75] The Court agrees.

### 1.    Doe's Section 1983 Equal Protection Claim (Count III)

It is settled law that "[t]o bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination," alleging that they "receiv[ed] different treatment from that received by other individuals similarly situated."[76] Doe alleges that Defendants "exhibited a racial bias against [Doe] in their disparate treatment of [Doe], who is black, and B.M., who is white."[77] He explains that "[he] was treated less favorably than a white perpetrator of crimes against him."[78]

But "[a]n essential element of a claim of selective treatment under the Equal Protection Clause is that the comparable parties were 'similarly situated'"—which means they are "alike 'in all relevant aspects.'"[79] Based on the facts in the Complaint, B.M. and Doe are not "similarly situated" in any relevant aspect. One was the victim of a vile act, the other was the perpetrator. The only similarity between the two is

---

[75]   WASD Reply, Doc. 58 at 3-4.
[76]   *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) (internal quotation marks omitted).
[77]   Compl. Doc. 1 ¶ 107.
[78]   *Id.*
[79]   *Blunt*, 767 F.3d at 273 (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)).

their common attendance at WHS and common membership on the baseball team, which are not at all relevant to the legal claims at issue here. Therefore, Doe fails to plausibly allege an equal protection claim. Accordingly, Count II fails to state a claim against the individual WASD Defendants, Holland, and Weber.[80]

### 2. Civil Rights Conspiracy Claim (Count II)

Count II—Doe's civil rights conspiracy claim—is premised on his equal protection claim.[81] It is equally well-settled that "[t]o prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding *to deprive him of his constitutional rights*."[82] There can be no conspiracy where there is no deprivation. As Count II is based entirely on the legally insufficient equal protection claim in Count III, it is also insufficient.

Additionally, the Court does not consider Count II a cognizable claim against WASD and Lycoming County and will therefore dismiss it against those institutional Defendants with prejudice. Municipal entities are liable for unconstitutional policies, practices, or customs, not the unconstitutional actions of their agents.[83] Agents of

---

[80]  In addition, the Court agrees with the individual WASD Defendants that the official-capacity claims against them merge into the claim against WASD as an entity. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.9 (3d Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

[81]  Compl., Doc. 1 ¶ 136 ("Defendants, acting within the scope of their employment and under color of state law, agreed among themselves and with other individuals to act in concert in order to deprive [Doe] of his clearly established Fourteenth Amendment right to equal protection under the law.").

[82]  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (internal quotation marks omitted) (emphasis added).

[83]  *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692-94 (1978).

municipalities may be liable for their own violations of others' constitutional rights or for conspiring to violate others' rights. But a municipality would only be able to perform the acts necessary to sustain a conspiracy through its agents. To hold a municipality liable for the conspiratorial actions of its agents would be the same *respondeat superior* theory rejected in *Monell*.[84]

Doe cites to *Colburn v. Upper Darby Township* and *Crisler v. Johnson*, two cases where courts permitted section 1983 claims premised on violations of the Fourteenth Amendment with facts that Doe argues are similar to the facts here. However, both of those cases involve the Due Process Clause of the Fourteenth Amendment.[85] Here, Doe alleges an equal protection claim, not a due process claim.[86] The Court will not comment on a potential due process claim because Doe did not plead one.

### 3.   *Monell* Claims

Doe also brings section 1983 claims against WASD and against Lycoming County.[87] Defendants argue that Doe's claims fail under *Monell v. New York City*

---

[84]  *See id.* at 691. Additionally, as the Court concludes that Doe fails to allege a constitutional violation against any Defendant, the Court does not reach Holland's argument that he does not qualify as a state-actor subject to section 1983.

[85]  *See* 838 F.2d 663 667-69 (3rd Cir. 1988), *abrogated on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) (assessing pretrial detainee's claim under the Due Process Clause); 2010 WL 1257458, at *7 (W.D. Pa. March 29, 2010) (same).

[86]  *See* Compl., Doc. 1 ¶ 144 ("Defendants' acts and omissions as set forth in the preceding paragraphs of this Complaint shock the conscience, deprived Plaintiff of his *Fourteenth Amendment right to equal protection* of the laws, and caused Plaintiff grave physical, emotional, psychological and other harm." (emphasis added)).

[87]  Compl., Doc. 1 ¶¶ 140-46.

*Department of Social Services* because they fails to sufficiently allege an unconstitutional custom, practice, or policy.[88] Doe alleges that Lycoming County and WASD failed to train and supervise its staff to properly investigate claims of child abuse and conduct proper, unbiased investigations.[89]

A municipal entity's failure to train its employees may be actionable, but only where "the training deficiency actually caused the injury."[90] As explained above, the only constitutional injury Doe alleges is a violation of his equal protection rights, but his allegations are plainly insufficient to sustain such a violation. Accordingly, his failure-to-train theory premised on an equal protection violation fails as well.[91]

## C.    State law claims

Doe brings a litany of state-law tort actions against Defendants. But as is evident in the Court's analysis of his claims below, he fails to demonstrate that Defendants' conduct caused other WAHS students to harass him. Defendants also raise an immunity defense that Doe fails to overcome. The Court first addresses the claims against Holland, then the sufficiency of his IIED claim (Count VIII), followed

---

[88]  *See* WASD MTD Br., Doc. 33 at 6-9; Lycoming Cnty. MTD Br., Doc. 32 at 8-10.

[89]  Compl., Doc. 1 ¶ 142.

[90]  *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

[91]  Weber also argues he is qualifiedly immune to Doe's constitutional claim. "Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). To determine if an officer is qualifiedly immune a court must determine whether "the officer's conduct violated a constitutional right" and whether "the right that was violated was clearly established." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). As that the Complaint fails to allege that any Defendant violated Doe's constitutional rights, Weber is entitled to qualified immunity at this time.

by Defendants' immunity defense. Lastly, the Court discusses Doe's civil conspiracy claim (Count XI).

### 1.    Negligence Claims Against Holland (Counts V, VII, and IX)

Holland argues that Doe's negligence claims against him (Counts V (common-law negligence), VII (NIED), IX (failure-to-rescue)) should be dismissed because the Complaint fails to state any cognizable duty Holland owed to Doe.[92] "In order for there to be an action at common law sounding in negligence, the alleged tortfeasor must first owe a duty to the allegedly injured party."[93] "Where there is no duty, there can be no negligence."[94]

Count V alleges that the WASD Defendants and Holland breached their duties to safeguard Doe by failing to reasonably supervise the baseball team on the night of the assault and by failing to properly investigate the assault.[95] Count VII alleges that Doe suffered emotional and physical harm from Defendants' failures with respect to the night of the incident and the consequent investigation.[96] Count IX alleges that Defendants violated the duties set forth in sections 314A and 322 of the Restatement (Second) of Torts.[97] Section 314 of the Restatement, provides the

---

[92]  Holland MTD Br., Doc. 23 at 13-16.
[93]  *Salvatore v. State Farm Mut. Auto. Ins. Co.*, 869 A.2d 511, 514 (Pa. Super. 2005) (citing *Heritage Surveyors & Engineers, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1252 (Pa. Super. 2002)).
[94]  *Id.*
[95]  *See* Compl., Doc. 1 ¶¶ 153-70.
[96]  *See id.* ¶¶ 185-86.
[97]  *Id.* ¶¶ 189-92.

general rule for the duty to aid others: that "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

Doe first argues that Holland has a special relationship with him such that Holland was under a duty of care to him. Section 314A regards duties to aid others that arise from special relationships.[98] The only applicable subsection provides that "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other" but the drafters of the Restatement acknowledge that other relations may give rise to similar duties.[99]

Doe also relies on section 322 of the Restatement, which generally describes the rescue doctrine.[100] That doctrine provides that when an actor "knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm."[101] The doctrine represents an exception to the general principle in section 314 stated

---

[98] *James v. Duquesne Univ.*, 936 F. Supp. 2d 618, 645 (W.D. Pa. 2013) ("Pennsylvania courts have adopted the main text of section 314A." (citing *Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 558 (E.D. Pa. 2004))).

[99] Restatement (Second) of Torts § 314A.

[100] *See Yania v. Bigan*, 155 A.2d 343, 346 (Pa. 1959) (citing Restatement (Second) of Torts §§ 314, 322).

[101] *Herr v. Booten*, 580 A.2d 1115, 1121 (Pa. Super. 1990) (quoting Restatement (Second of Torts § 322)).

above, that mere knowledge that one has the power to aid an individual does not give rise to a duty to aid the individual.[102] When an actor plays a role in causing danger to others, he may be made to answer for it.

Holland argues that he has no relationship with Doe from which a duty could arise because he acted as the WASD's attorney throughout the investigation. He notes that as WASD's attorney, he does not stand *in loco parentis* over students as Pardoe and Freed would in their roles as school administrators.[103] He therefore argues that he has no legal duty to provide for Doe's wellbeing. He also argues that he did not voluntarily undertake any duty of care to Doe by participating in the investigation of the Myrtle Beach assault.

### a.    Whether the Court Should Infer A Duty of Care

Doe does not identify any authority for the novel proposition that an attorney conducting an internal investigation on behalf of a school owes an individual duty of care to a student whose complaint is the subject of the investigation. To the extent that Doe asks the Court to infer such a duty of care, the Court declines his invitation. Pennsylvania courts weigh five factors in determining whether to impose a duty on

---

[102] The Drafters of the Restatement specifically acknowledged exceptions such as the rescue doctrine in the commentary to Rule 314, providing that the general rule does not apply where the danger the victim faces is due "to any active force which is under the actor's control." Restatement (Second) of Torts § 314, cmt. d.

[103] *See* 24 P.S. § 13-1317 ("Every teacher, vice principal and principal in the public schools shall have the right to exercise the same authority as to conduct and behavior over the pupils attending his school, during the time they are in attendance, including the time required in going to and from their homes, as the parents, guardians or persons in parental relation to such pupils may exercise over them.").

a defendant: (1) "the relationship between the parties"; (2) "the social utility of the actor's conduct"; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty on the actor; and (5) the overall public interest in the proposed solution."[104] These are known as the *Althaus* factors.

The Court focuses on the third factor—the nature of the risk imposed—as its analysis on this factor reveals a flaw common to most of Doe's tort claims. The foreseeability of the risk of harm is the linchpin of any negligence claim.[105] First, the Court concludes that the sexual assault was not a consequence Holland could reasonably foresee.[106] Doe argues that "administrators and members of the Williamsport public knew what usually goes on during the Myrtle Beach trip."[107] Doe therefore contends that Defendants had a duty based on their awareness of a risk that Doe might be hazed. But the Complaint alleges only that *Weber* "was aware of the trip and what usually goes on."[108] It does not allege that Holland, any other administrator, or any member of the general public knew about potential hazing at the Myrtle Beach trip. Moreover, an allegation that Weber "was aware of the trip

---

[104]   *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2002).

[105]   *See Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 250 (Pa. Super. 2014).

[106]   *See Jean v. Bucknell Univ.*, 534 F. Supp. 3d 404, 413 (M.D. Pa. 2021) ("Although the harm caused by hazing is extremely serious, its foreseeability with any level of specificity is low; [the defendant university] might have been aware that hazing would occur on its campus at some point while having no knowledge that [the plaintiff] would be hazed at a specific initiation event.").

[107]   Opp. to Holland MTD, Doc. 43-1 at 17.

[108]   Compl., Doc. 1 ¶ 45.

and what usually goes on" during it is factually insufficient to infer that Weber knew or should have known that Doe would be sexually assaulted on the trip.

Second, the Court finds that Doe's continued harassment at WAHS is not a foreseeable consequence of Holland's alleged misconduct. The Court simply cannot discern a sufficient connection between Holland's alleged misconduct and the actions of the students harassing Doe, who were third parties.[109] Doe argues that Holland proximately caused his harm "by enabling dissemination of videos of the sexual assault and by allowing the assault, harassment, and revictimization of [Doe] to continue unabated until [he] was forced to leave the school district."[110] But the Complaint's allegations strongly suggest that Defendants acted with the goal of preventing the video's dissemination rather than causing it. Accordingly, it is clear that Defendants did not "enable" dissemination of the video. Put differently, the risk of Doe's "revictimization" is simply not a result of the investigation. Rather, it appears to be a result and a foreseeable consequence of B.M.'s assault of Doe and the dissemination of the video—both independent actions of WAHS students, not

---

[109] Doe argues that Holland's duties to the school district are unclear because they are governed by contract and Doe does not have access to Holland's contract at this pre-discovery stage. Opp. to Holland MTD, Doc. 43-1 at 17-18 (citing Holland MTD Br., Doc. 23 at 24). However, that information is not in the Complaint and therefore the Court will not consider it at this juncture.

[110] Opp. to Holland MTD, Doc. 43-1 at 20.

Defendants. There is nothing to suggest that Holland individually could have prevented other students from harassing Doe.[111]

The other *Althaus* factors also disfavor inferring a duty of care on Holland's part. The first factor weighs against inferring a duty because the relationship between Holland and Doe is tenuous at best. Holland is an agent of the school board.[112] Although WASD may owe Doe duties of care as an institution, Holland has no individual relationship to Doe. There are no allegations that he had the power to control WAHS students and prevent their harassment of Doe.

The second factor—the social utility of Holland's conduct—also weighs against finding a duty. Holland was performing an important public function by generally serving as WASD's solicitor and by investigating the alleged misconduct. The Pennsylvania General Assembly recognition of the importance of Holland's function is evident in 24 P.S. § 4-406, which authorizes school boards to appoint solicitors at their discretion. The fourth and fifth *Althaus* factors are the consequences of imposing a duty on the actor and the overall public interest in the

---

[111] Although the Court need not reach the issue, Doe's failure to establish a connection between any of Holland's conduct and WAHS's students continued harassment of him equally applies to the causation element of his tort claims. "[T]he fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence." *Jones v. Montefiore Hosp.*, 431 A.2d 920, 923 (Pa. 1981) (quoting *Majors v. Brodhead Hotel*, 205 A.2d 873, 878 (Pa. 1965). But that is exactly what Doe fails to allege: that Holland's intervention would have prevented or even affected other WAHS students' harassment of Doe.

[112] 24 P.S. § 4-406.

proposed solution. Both weigh against inferring a duty of care. Holland is already subject to regulation as a member of the bar for his conduct as WASD's solicitor.

Doe responds by directing the Court's attention to his allegations that Holland was involved in conduct that may have violated several criminal statutes. Putting aside the issue of whether Doe plausibly alleges violation of those statutes, the criminal nature of those statutes is an indication that the Pennsylvania General Assembly did not intend to vindicate the public's interest in combatting such misconduct through private civil actions. The Court notes that the same conduct underlies both Doe's Title IX claim and his negligence claims, so he is not left without a remedy.[113] Therefore, the Court concludes that there are substantial negative consequences to inferring a new duty of care in this context and that the public interest would not favor it. Accordingly, the Court will not infer a new duty of care on Holland's part.

### b.    The Rescue Doctrine

As for the rescue doctrine, as noted above, Doe fails to identify any conduct on Holland's part that would give rise to the risk that he would be assaulted. Holland was not present at the Myrtle Beach trip. There is no suggestion that he had anything to do with the trip until the investigation began, which occurred after the assault.

---

[113]    Although Holland is not personally liable under Title IX, his actions may form the basis of WASD's Title IX liability as he is WASD's agent.

As for the investigation, as explained above, Holland did not cause other students at WAHS to harass Doe through failing to adequately investigate Doe's assault or purposefully covering up Doe's assault. Therefore, the general rule in section 314 applies. Even if Holland subjectively realized the risk that Doe would be harassed at the hands of his WAHS peers, he was not under a duty to prevent that harassment because he played no role in causing it and had no control over the students harassing Doe.

Therefore, the Court will dismiss the Counts V, VIII, and IX against Holland and Count IV against WASD to the extent that Doe seeks to hold WASD liable for Holland's alleged negligence.

### 2.    Negligence *Per Se* Claim (Count X)

Holland and Weber next challenge Doe's negligence *per se* claim (Count X). Holland argues that Doe fails to allege his individual involvement in the alleged statutory violations.[114] Weber argues that Doe fails to establish a causal relationship between any alleged statutory violations and his injuries.[115] The Court agrees with both of them and also notes additional deficiencies in Count X.

"The concept of negligence *per se* establishes the elements of duty and breach of duty" for the purposes of a negligence action "where an individual violates an

---

[114]  Holland MTD Br., Doc. 23 at 20-25.
[115]  Weber MTD Br., Doc. 34 at 21-23.

applicable statute, ordinance, or regulation designed to prevent a public harm."[116] In order to prove a claim based on negligence *per se*, a plaintiff must show that: (1) the "purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally"; (2) the "statute or regulation must clearly apply to the conduct of the defendant"; (3) the "defendant must violate the statute or regulation"; (4) the "violation of the statute or regulation must be the proximate cause of the plaintiff's injuries."[117]

Doe alleges that Defendants violated several criminal statutes: 18 Pa. C.S. §§ 4904 (unsworn falsification), 4910 (tampering with evidence), 4952 (intimidation of a witness), 5101 (obstructing administration of law), and 5301 (official oppression).[118] He also alleges that Defendants' failure to report B.M.'s sexual assault violated 23 Pa. C.S. § 6311 and the Educator Discipline Act, 24 P.S. § 2070.1 *et seq.*[119]

Based on the allegations in the Complaint, the only potential statutory violation that Holland could have taken a part in is the failure to report B.M.'s assault to the authorities, in violation of 23 Pa. C.S. § 6311 and 24 P.S. § 2070.9a(a)(3.1).[120]

---

[116] *Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1042 (Pa. 2015) (quoting *Schemberg v. Smicherko*, 85 A.3d 1071, 1073-34 (Pa. Super. 2014)).

[117] *Id.* at 1042-43 (quoting *Schemberg*, 85 A.3d at 1073-74).

[118] Compl., Doc. 1 ¶ 194.

[119] *Id.* ¶ 199. Doe does not identify which particular section of the Educator Discipline Act Defendants violated. Section 2070.9a requires educators to report instances of sexual abuse in a manner similar to that provided in 23 Pa. C.S. § 6311.

[120] *See* 23 Pa. C.S. § 6311(a)(14) (including "attorney[s] affiliated with an agency, institution, organization or other entity, including a school" as mandatory reporters).

The other identified violations could only stem from Weber's and Pardoe's actions.[121]

Both § 6311 and § 2070.9a(a)(3.1) require school officials to report sexual misconduct in certain circumstances that appear present here.[122] But none of those violations appear to have caused Doe's injuries. They did not occur prior to the Myrtle Beach assault so they could not have caused it. Additionally, a negligence *per se* claim premised on a violation of a reporting statute generally involves plaintiffs who have continued to suffer sexual abuse after mandated reporters became aware of it.[123] Doe has not alleged that he continued to suffer sexual abuse after Defendants became aware of B.M.'s assault of him. And as noted above, Doe

---

[121] Doe alleges that Weber's recollection of his meeting with Doe published in Weber's report was an intentional falsification, which would appear to violate 18 Pa. C.S. § 4904 and/or § 4910. *See* Compl., Doc. 1 ¶ 51. Doe also alleges that Pardoe met with the student who filmed B.M. assaulting Doe and told her to refrain from speaking about the incident. *See id.* ¶ 56. Assuming Pardoe's actions constituted "intimidation"—which is far from clear—his contact with the student who took the video of the assault and his mother could potentially serve as a violation of 18 Pa. C.S. § 4952. The Complaint alleges Holland participated in the investigation of Doe's assault, but it does not connect him to the allegations that could serve as the basis for the criminal violations Doe identifies in Count X. But it is not at all clear that any of the criminal statutes Doe cites to—aside from 23 Pa. C.S. § 6311—are intended to protect him. They appear to protect the general public's interest in the integrity of the judicial and prosecutorial functions, not the individual interests of victims of an underlying offense.

[122] *See* 23 Pa. C.S. § 6311(b) (requiring mandated reporters to report suspected child abuse if they have "reasonable cause to suspect that a child is a victim of child abuse"); 24 P.S. § 2070.9a(a)(3.1) (requiring certain school administrators to file a report with the Pennsylvania Department of Education if they have "[i]nformation which constitutes reasonable cause to suspect that an educator has caused physical injury to a child or student as a result of negligence").

[123] *See, e.g.*, *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 644 (E.D. Pa. 1999) (denying motion to dismiss a negligence *per se*-section 6311 claim because the plaintiff sufficiently alleged that defendants violated this statute through their failure to act and that this violation proximately caused the *ongoing* instances of sexual abuse" (emphasis added)).

does not adequately explain how the investigation or cover-up caused other WAHS students to harass him. He therefore cannot establish a causal relationship between the statutory violations and his injuries.

Therefore, the Court will dismiss his negligence *per se* claims against all Defendants.

### 3.    IIED Claim (Count VIII)

Defendants next challenge the legal sufficiency of Doe's IIED claim.[124] To recover on an IIED claim, a plaintiff must satisfy four elements: (1) "the conduct must be extreme and outrageous"; (2) "the conduct must be intentional or reckless"; (3) "it must cause emotional distress"; and (4) "the distress must be severe."[125] "[A] plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct."[126] Defendants offer several arguments. But the Court focuses on the intent requirement and the lack of a causal relationship between Defendants' conduct and Doe's injury. As stated above, Doe has alleged two injuries: the assault itself, and the consequent harassment from other WAHS students.

With respect to the assault, Doe fails to allege any intentional act on the part of any Defendant that led to his being assaulted by B.M. With respect to Doe's continued harassment, Doe identifies some affirmative and even potentially

---

[124]  Weber MTD Br., Doc. 34 at 20; WASD MTD, Doc. 33 at 12-13; Holland MTD Br., Doc. 23 at 17-19.

[125]  *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d. Cir. 1979) (citing Restatement (Second) of Torts § 46).

[126]  *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. 2004).

intentional acts, such as the fabrication of false reports, but as explained above, he fails to establish a causal relationship between Defendants' alleged misconduct and other students' harassment of him.

As noted above, the source of Doe's injuries appears to be the dissemination of the videos of B.M.'s assault, whether through social media or word of mouth. Doe cannot establish that Defendants took any affirmative act to cause the dissemination. Nor can he show that Defendants' failure to comply with known legal duties caused other students to harass him. There are no allegations that Defendants informed other students of the details of Doe's assault or encouraged others to harass Doe. Again, Defendants actively sought to *suppress* details of the assault, not spread them. It is unclear how the investigation could have impacted Doe's continued harassment at all, and Doe carries the burden to show that such a causal relationship exists.[127]

Therefore, Count VIII must be dismissed against all Defendants.

### 4.    Immunity

Weber, Lycoming County, and the WASD Defendants all argue that they are immune to some or all of Doe's state-law claims under the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa. C.S. § 8541 *et seq.*[128] Section 8541 broadly provides immunity to local agencies "for any damages on account of

---

[127]   Given the Court's conclusion, it need not address Defendant's argument that their conduct was insufficiently outrageous to support an IIED claim or that an IIED claim cannot proceed on an omission-based theory.

[128]   Weber MTD Br., Doc. 34 at 16-17; Lycoming Cnty. MTD Br., Doc. 32 at 20-21; WASD MTD Br., Doc. 33 at 14.

any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."

### a.   Defendants' Immunity to Negligence Claims

The immunity conferred by the PPSTCA is limited by specific exceptions provided in section 8542. To overcome PPSTCA immunity, a plaintiff must demonstrate that their claim is legally sufficient[129] and that his or her "injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one" of several categories enumerated in section 8542(b). Employees of local agencies are "generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment."[130] Section 8542(b)(9) provides that local agencies and their employees are not immune to claims arising from "[c]onduct which constitutes an offense enumerated under [42 Pa. C.S. § 5551(7)] . . . if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence."

Section 5551(7) lists the following offenses: 18 Pa. C.S. §§ 3011(b) (trafficking of minors), 3012 (involuntary servitude of minors), 3121 (rape), 3122.1 (statutory sexual assault), 3123 (involuntary deviate sexual intercourse), 3124.1 (sexual assault), 3124.2 (institutional sexual assault), 3125 (aggravated indecent

---

[129]  42 Pa. C.S. § 8542(a)(1).
[130]  *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (citing 42 Pa. C.S. § 8545).

assault), and 4302 (incest). Sections 3011, 3012, and 4302 clearly do not apply to the facts of this case. Aside from section 3124.2, all of the other offenses listed in section 5551(7) require the actor to have engaged in intercourse with or otherwise penetrate the victim.[131] Here, Doe alleges that B.M. touched Doe with B.M.'s genitalia. Although abhorrent, B.M's actions do not constitute penetration. Therefore, those offenses cannot serve as the predicate to overcome Defendants' immunity under section 8542(b)(9).

That leaves 18 Pa. C.S. § 3124.2(a.2)(1), which provides that any "other person who has direct contact with a student at a school commits a felony of the third degree when he engages in sexual intercourse, deviate sexual intercourse, or indecent contact with a student" is guilty of institutional sexual assault. It is the only offense listed in section 5551(7) that criminalizes indecent contact, which is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."[132]

---

[131] *See* 18 Pa. C.S. §§ 3101 (defining "sexual intercourse" as "intercourse per os or per anus, with some *penetration*, however slight" and defining "deviate sexual intercourse" as "[s]exual intercourse" or any form of "*penetration*, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures"), 3122 (defining rape as "sexual intercourse" under certain circumstances), 3122.1 (defining "statutory sexual assault" as "sexual intercourse" between individuals with certain differences in age), 3123 (defining "involuntary deviate sexual intercourse" as "deviate sexual intercourse" under certain circumstances), 3124.1 (defining "sexual assault" as "sexual intercourse or deviate sexual intercourse" without consent), 3125 (defining "aggravated indecent assault" as "*penetration*, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures" under certain circumstances) (emphases added).

[132] 18 Pa. C.S. § 3101.

31

B.M.'s actions may constitute "indecent contact," but the Complaint does not allege that B.M. touched Doe's "intimate parts"—it alleges that B.M. touched Doe's face with his own genitalia.[133] Nor does it allege any sexual desire on B.M.'s part. Moreover, although "any other person" is a broad class, it is narrowed by "direct contact," which is defined as "care, supervision, guidance, or control."[134] There are no allegations that B.M. had any authority over Doe. Therefore, as Defendant's alleged negligence did not cause any of the offenses listed in section 5551(7), section 8542(b)(9)'s exception to immunity cannot apply to Defendants' negligent conduct.

Accordingly, Pardoe, McCann, Miller, and WASD are immune to Counts V (negligence), VII (NIED), and IX (negligent failure to rescue).[135] Weber and Lycoming County are immune to Counts VI (negligence), VII, and IX. Count IV is also dismissed to the extent that Doe seeks to hold Lycoming County and WASD liable for their respective employees' negligent acts.

### b.    Defendants' Immunity to Intentional Tort Claims

The PPSTCA's exceptions to immunity only apply to "negligent acts," which are defined as not to "include acts or conduct which constitutes a crime, actual fraud, actual malice, or willful misconduct."[136] WASD and Lycoming County argue that

---

[133]   Compl, Doc. 1 ¶ 31.
[134]   18 Pa. C.S. § 3124.2(a.2)(2)(i).
[135]   As the Complaint alleges Holland is "employed by the WASD," he would also be immune had the Court not already dismissed the Counts against him for failing to state a claim. Compl., Doc. 1 ¶ 14.
[136]   42 Pa. C.S. § 8542(a)(2).

they are immune to Doe's IIED claim contained in Count VII because IIED is not a negligent act.[137] Although the Court has already dismissed Count VII for failing to state a claim, the Court agrees that WASD and Lycoming County are immune to IIED claims.

"Because the relevant exception is limited to injuries "caused by the *negligent* acts of the local agency," the exception cannot apply to an intentional tort such as IIED with respect to Lycoming County and WASD.[138] Therefore, Count VII must be dismissed with prejudice against Lycoming County and WASD. Additionally, Lycoming County or WASD cannot be held vicariously liable for its employees' intentional acts. Accordingly, the Court dismisses Count IV to the extent it seeks to hold them vicariously liable for their employees' alleged IIED.[139]

---

[137] WASD MTD Br., Doc. 33 at 14.

[138] *See Page ex rel. Page v. Sch. Dist. of Philadelphia*, 45 F. Supp. 2d 457, 469 (E.D. Pa. 1999) (similarly concluding that municipal defendants were immune to IIED claims (citing *Weissman v. City of Philadelphia*, 513 A.2d 571 (Pa. Cmwlth. 1986))).

[139] Although the Court has already dismissed Doe's negligence *per se* claim (Count X) on different grounds, Doe's claim presents a more complex problem in the context of the PPSTCA. The PPSTCA's exceptions only apply to "negligent *acts*." The Court infers from the word "acts" that the statute focuses on the underlying conduct rather than the legal nature of the claim. One could bring a negligence action based on intentional conduct. Indeed, some of the statutory violations underlying Count X are criminal statutes that clearly contemplate intentional acts. *See* 18 Pa. C.S. § 4904 (criminalizing certain actions when done "with intent to mislead a public servant in performing his official function"). But one could violate 23 Pa. C.S. § 6311 negligently or intentionally. In any event, the Court need not reach this issue at this time, having dismissed Count X against all Defendants on different grounds. Additionally, municipal employees are not entitled to immunity if their actions constituted "crime[s], actual fraud, actual malice or willful misconduct." 18 Pa. C.S. § 8550. Doe's IIED Claim (Count VII) and negligence *per se* claims (Count X) may overcome the individual Defendants' immunity defenses under section 8550 but, as discussed above, Doe fails to adequately allege an intentional act or willful misconduct.

### 5.    Civil Conspiracy (Count XI)

Under Pennsylvania law, a claim for civil conspiracy "must be based upon an independent underlying civil cause of action."[140] To prevail on a civil conspiracy claim, a plaintiff must show: (1) "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose"; (2) "an overt act done in pursuance of the common purpose"; and (3) "actual legal damage."[141] "Proof of malice or an intent to injure is essential to the proof of a conspiracy."[142]

The Court has dismissed every underlying cause of action against Defendants save Doe's allegation that WASD violated Title IX. Accordingly, Count XI must be dismissed against Weber and Lycoming County, who are not named as Defendants in Count I. As for the other WASD Defendants, any allegation that they conspired with WASD would be barred by the intracorporate conspiracy doctrine, which provides that "agents of a single entity cannot conspire among themselves."[143] Therefore, Count XI must be dismissed, as it can only allege a conspiracy between WASD and its agents to violate Title IX.

---

[140]  *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 418 (E.D. Pa. 2009).

[141]  *Strickland v. University of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. 1997).

[142]  *Id.* at 988 (citing *Skipworth by Williams v. Lead Industries Association*, 690 A.2d 169, 174 (Pa. 1997)).

[143]  *Rutherfoord v. Presbyterian-University Hospital*, 417 Pa. Super. 316, 333-34 (Pa. Super. 1992).

## IV.   CONCLUSION

Despite the unsettling nature of Doe's allegations, he fails to demonstrate a legal basis for the remedies he seeks on his constitutional and state-law claims. Some of the misconduct Doe alleges involves violations of the law that are not his to pursue. As to some of those violations, the appropriate authorities have exercised their discretion not to act. As to others, the Pennsylvania General Assembly has decided that private civil actions are not the appropriate remedy.

That said, the Court will grant Doe leave to amend his pleading in accordance with the Court's analysis. But for the foregoing reasons, the Court grants Defendants' motions in part.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge