Exhibit 8: Transcript of Scicchitano

Case 4:22-cv-01387-MWB   Document 167-8   Filed 10/29/25   Page 2 of 13

Deposition of David Scicchitano                                    John Doe v. Williamsport Area School District, et al.

1  Q.          So in fact -- I'm going to use
2  the word -- you were so incredulous, that your
3  report says -- this is you writing now at the
4  bottom of page 5, quote, Pardoe confirmed that
5  this was accurate and that Lepley really said
6  that, period, end quote.
7              Am I reading your report
8  correctly at the very bottom of the page?
9  A.          Yep.  Yes, you are.
10 Q.          And Mr. Pardoe admitted to you
11 that Attorney Lepley said that to him about, it
12 could be criminal if it falls in the wrong
13 hands?
14 A.          Yes.
15 Q.          At that point in time, were you
16 concerned at all that that statement, falling
17 into the wrong hands, could be referencing the
18 Myrtle Beach police department?
19 A.          Yes.
20 Q.          And did you believe that Mr.
21 Pardoe was, at least at that point in time, in
22 May of 2018, trying to prevent this from being
23 reported to the Myrtle Beach police department?
24 A.          Yes, I was.
25 Q.          Do you believe that that refusal

Case 4:22-cv-01387-MWB   Document 167-8   Filed 10/29/25   Page 3 of 13

Deposition of David Scicchitano                    John Doe v. Williamsport Area School District, et al.

```
 1   to report a crime constitutes a crime in the
 2   Commonwealth of Pennsylvania?
 3   A.           Yes.
 4   Q.           And what crime is that, sir?
 5   A.           Obstruction of justice.
 6   Q.           Would you recommend that Mr.
 7   Pardoe be charged with obstruction of justice
 8   by the attorney general?
 9   A.           Yes.
10                Well, let me clarify everything
11   before I go down that road.
12   Q.           Sure.
13   A.           I have no discretion or
14   authority to do charges.  Like, I can't go off
15   and charge somebody on my own.  Everything
16   goes -- I investigate it, everything gets
17   forwarded to Harrisburg.  The attorneys make
18   the decision.  Then they tell me to charge or
19   close the case, so.
20   Q.           And since I've asked you that
21   question now at this stage in the deposition,
22   let me just ask you, you start at the beginning
23   saying you get an opening letter.  I think that
24   was the word you used.
25                Am I saying that correctly, an
```

```
 1  he -- at least he was -- his answers would
 2  indicate not 100 percent, no.
 3  Q.            And in fact, you later go on to
 4  question him about, like, if a rape occurs at
 5  your school, do you call ChildLine or how do
 6  you handle that.
 7                Do you remember asking those
 8  questions?
 9  A.            Yes.
10  Q.            So you state on page 7 here in
11  the second -- well, the second full paragraph,
12  I asked Pardoe if JZ violated school policy by
13  his actions, period.  He said he was removed
14  from the team for sharing the video, period,
15  end quote.
16                I'll stop there.  Am I reading
17  your report correctly?
18  A.            Yes.
19  Q.            Is that true?
20  A.            Yes.
21  Q.            To your knowledge, JZ was
22  removed from the team?
23  A.            It was -- that's what he said.
24  I'm aware it was just, like, a one game
25  removal.
```

| | | |
|---|---|---|
| 1 | Q. | In other words, that's not true. He got to play the very next year? |
| 3 | A. | Yeah, he got to play. |
| 4 | Q. | I mean, so basically, the kid missed out on one or two games as a result of videotaping a sexual assault; is that your understanding? |
| 8 | A. | Yes. |
| 9 | Q. | And that decision was made solely by Williamsport Area School District, correct? |
| 12 | A. | Yes. |
| 13 | Q. | So then let's talk about the hazing prevention course. |
| 15 | | Mr. Pardoe says that BM was required to complete an online course on hazing prevention as part of his punishment. |
| 18 | | Am I reading that correctly? |
| 19 | A. | Yes. |
| 20 | Q. | And did you find that odd that they were requiring him to do a hazing prevention course? |
| 23 | A. | Yes. |
| 24 | Q. | Why? |
| 25 | A. | Because this -- at some point, |

Case 4:22-cv-01387-MWB   Document 167-8   Filed 10/29/25   Page 6 of 13

Deposition of David Scicchitano                    John Doe v. Williamsport Area School District, et al.

```
 1   Q.              According to Agent Weber's
 2   report, he has written down that he, meaning
 3   the victim, was shown a video of what happened
 4   while at Myrtle Beach, period.
 5                   Am I reading that correctly?
 6   A.              Yes.
 7   Q.              Based upon that statement in
 8   Agent Weber's report that the victim was shown
 9   the video, do you believe other people other
10   than the victim, my client, were shown the
11   video in Myrtle Beach?
12   A.              Yes.
13   Q.              The fact that that video was
14   being shown to other individuals at Myrtle
15   Beach, do you believe that somebody associated
16   with Williamsport Area School District would've
17   known about that video being passed around
18   among the players in Myrtle Beach?
19   A.              Yeah, I believe they do because
20   the kid -- they were -- Pardoe admitted to
21   telling the players to delete the videos.
22   Q.              The only question today is, we
23   just don't know whether that statement was made
24   in Myrtle Beach or whether it was made in
25   Pennsylvania?
```

Deposition of David Scicchitano                                    John Doe v. Williamsport Area School District, et al.

Case 4:22-cv-01387-MWB    Document 167-8    Filed 10/29/25    Page 7 of 13

```
 1   correctly?
 2   A.          Yes.
 3   Q.          BM, the perpetrator, was allowed
 4   to participate in the playoffs, correct?
 5   A.          I believe he was.
 6   Q.          And he even got a medal for
 7   being in the playoffs the year this happened in
 8   2018?
 9   A.          He did.
10   Q.          So this statement about being
11   suspended for the rest of year is not correct?
12   A.          No, it's not correct.
13   Q.          Do you think that Weber knew
14   that was a lie when he wrote it?
15   A.          Again, it's the way he wrote it
16   to make it sound worse than it actually was.
17               They missed one game, maybe two,
18   and that's it.
19   Q.          Okay.  And then he goes on to
20   kind of conclude his investigation here, quote,
21   none of the activity of any of the boys was
22   meant to be sexual in nature, and none of the
23   boys received any sexual gratification for what
24   had occurred, period, end quote.
25               Am I reading that correctly?
```

1  was.

2  **Q.          Okay.**

3  **              And during your investigation**

4  **and in speaking with the victim, John Doe, were**

5  **you able to learn that he was called names,**

6  **harassed, and bullied after the Myrtle Beach**

7  **trip?**

8  A.          Yes.

9  **Q.          To your knowledge, during the**

10 **investigation, was the administration of the**

11 **school aware that the video was shared between**

12 **students?**

13 A.          My opinion is they did find out

14 and told kids to delete it.  And that was

15 before Matt Wood made his call to Willie Weber

16 on May 18, 2018.

17 **Q.          So sometime between March and**

18 **May 18th, you believe that the school district,**

19 **through its administrators were -- was aware**

20 **that video of this assault was being shared**

21 **amongst students at the school?**

22 A.          Again, that's my opinion based

23 on how everything lays out time wise.  I don't

24 have concrete evidence of that, but that was my

25 opinion.

Case 4:22-cv-01387-MWB   Document 167-8   Filed 10/29/25   Page 9 of 13

Deposition of David Scicchitano                    John Doe v. Williamsport Area School District, et al.

1   had another investigation like this anywhere.
2   I mean, it's not -- these circumstances are not
3   common, so this is unusual.
4              So but to answer the other half
5   of the question is, no, I've never heard or
6   seen of this in any county agency, to trust one
7   person with that volume.
8   Q.           Based on that policy of how
9   ChildLine reports were investigated, is it your
10  belief, based on what you learned during this
11  investigation, that credible reports of child
12  abuse were not properly investigated by
13  Lycoming County?
14  A.           Concerning this incident, yes.
15  They were not properly investigated.
16  Q.           And based on William Weber's
17  answer to you about the lack of reports he was
18  making based on ChildLine reports, would that
19  lead you to believe that there are other
20  instances of not proper investigation being
21  done on those?
22  A.           Yes.  It would worry me.
23  Q.           Based on your investigation, did
24  anyone employed by Lycoming County commit a
25  crime during the handling of the investigation

Case 4:22-cv-01387-MWB   Document 167-8   Filed 10/29/25   Page 10 of 13

Deposition of David Scicchitano                                      John Doe v. Williamsport Area School District, et al.

1   of the assault of John Doe in Myrtle Beach?

2   A.            Yes.

3   Q.            Who?

4   A.            William Weber.

5   Q.            Based on your investigation, did
6   anyone employed by Williamsport Area School
7   District commit a crime during the handling of
8   the investigation of the assault of John Doe in
9   Myrtle Beach?

10  A.            Yes.

11  Q.            Who?

12  A.            Brandon Pardoe.

13  Q.            Based on your investigation,
14  were the individuals you just named working in
15  concert together?

16  A.            Yes.

17  Q.            Based on your investigation, was
18  there a criminal conspiracy between those
19  individuals?

20  A.            In my opinion, yes.

21  Q.            You indicated that you had
22  recommended charges in this case?

23                Obviously, I know that's the
24  AG's office --

25  A.            I have the opinion that I would

Case 4:22-cv-01387-MWB   Document 167-8   Filed 10/29/25   Page 11 of 13

Deposition of David Scicchitano                                    John Doe v. Williamsport Area School District, et al.

```
 1   like to file charges, but again, not my
 2   decision.
 3   Q.            If -- you know, this is
 4   hypothetical, maybe, but when you said, I would
 5   like to have recommended charges, in speaking
 6   with -- is it, Mr. Dye was the AG on the case?
 7   A.            Yes.
 8   Q.            In speaking with him, obviously,
 9   he then had to make his own determination and
10   speak with other attorneys at the office, but
11   in your conversations with him, who did you
12   say, these are charges that I'm looking at and
13   these are the people that I'm looking to
14   potentially charge?
15   A.            Right.  I would have at some
16   point communicated that Weber and Pardoe should
17   be charged, in my opinion, for -- you know, I
18   would have spouted at least one charge.  I'm
19   not a lawyer, but I -- obstruction is at the
20   very minimum.
21                 One thing I was -- I was asked
22   to do one thing -- one of the things I was
23   asked to do by Attorney Dye was to look at the
24   policy and procedure for the county detectives
25   in that office, and specifically, in regards to
```

Case 4:22-cv-01387-MWB   Document 167-8   Filed 10/29/25   Page 12 of 13

Deposition of David Scicchitano                           John Doe v. Williamsport Area School District, et al.

```
 1   report writing, and they had none at the time.
 2   They had none.  So he could do whatever he
 3   wanted.  Like, he could document and not
 4   document whatever he wanted.
 5   Q.              Looks like he did whatever he
 6   wanted?
 7   A.              And he did.
 8                   And he said it.  If you listen
 9   to the interview, he's bragging about it, I can
10   tell you right now, I didn't write 500 reports.
11   Well, you have to write 500 reports.  You have
12   to.  Each kid is depending on you, and that's
13   part of the process is report writing.
14                   So anyway, I had the
15   conversation with Attorney Dye.  He told me to
16   look into that.  I did.  Gave him the
17   information.  Whatever happened -- I don't
18   know.  I'm not privy.  I wasn't there, but I
19   was told that they're not going to file
20   charges.  I think because, the big reason is
21   that policy and procedure did not exist.
22   Q.              So you were never actually
23   provided an explanation as to why charges were
24   not brought against Pardoe, Weber, or anyone
25   else tied to this case?
```

Case 4:22-cv-01387-MWB   Document 167-8   Filed 10/29/25   Page 13 of 13

Deposition of David Scicchitano                                John Doe v. Williamsport Area School District, et al.

```
 1   A.              I was told verbally that the
 2   report -- yeah, the report writing policy
 3   was -- lack of, is the reason why, is a big
 4   reason why.
 5   Q.              So and again, I know this isn't
 6   your determination, but if it was ever
 7   explained further to you, the determination was
 8   made to not bring criminal charges because
 9   Lycoming County's -- the County's policy about
10   report writing was so faulty that what Weber
11   was doing was not criminal?
12   A.              I wasn't told that, but I was
13   told that it was -- it jeopardizes our case.
14   It jeopardized our case, so -- I'm not going --
15   I'm not going to attempt to dive into an
16   attorney's mind, but that's how it was
17   explained to me.
18                   I'm not exactly thrilled with
19   it, but that's how it was explained to me.
20   Q.              My next question was, did --
21   were you satisfied or did you agree with that
22   determination to not bring charges?
23   A.              I don't necessarily agree with
24   it, but I have no choice.  It's not my job.  My
25   job's to investigate and give everything to the
```