## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN DOE,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **NO. 4:22-1387-MWB** |
| **v.** | : | |
| | : | |
| **WILLIAMSPORT AREA** | : | |
| **SCHOOL DISTRICT,** | : | |
| **Defendant.** | : | **Hon. Matthew W. Brann** |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Gaetano D'Andrea – PA 208905
LAFFEY, BUCCI, D'ANDREA, REICH & RYAN LLP
1100 Ludlow Street, Philadelphia, PA 19107
Suite 300
215-399-9255
gdandrea@laffeybucci.com

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ……………………… **i-iii**

**I. PROCEDURAL HISTORIES** ………………….. **1**

**II. STATEMENT OF FACTS** …………………….. **1**

**III. QUESTIONS PRESENTED**…………………….. **1**

    A. Has Plaintiff established a genuine dispute of material fact demonstrating that school officials had knowledge of severe sexual harassment, responded with deliberate indifference, and denied Plaintiff educational benefits?

        Answer: Yes ……………………………………… 1

    B. Has Plaintiff established a genuine dispute of material fact that Plaintiff suffered sexual abuse by other students while under the school's care and supervision?

        Answer: Yes ……………………………………… 1

    C. Has Plaintiff established a genuine dispute of material fact demonstrating Defendant breached its duty to protect Plaintiff which was a cause of Plaintiff's injuries?

        Answer: Yes ……………………………………… 2

    D. Is Defendant entitled to judgment as a matter of law when there are genuine issues of material fact in dispute?

        Answer: No ……………………………………. 2

**IV. ARGUMENT**……………………………………….. **2**

    A. Standard of Review ………………………….. 2

B.  Title IX Argument  …………………................    3

C.  Immunity Argument …………………………    9

D.  Negligence …………………………………    11

E.  Negligent Infliction of Emotional Harm …………..    16

F.  Failure to Rescue……………………………...    21


**V. CONCLUSION** …………………………………...    **23**

**CERTIFICATE OF SERVICE** ………………………    **iii**

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Althaus ex rel. v. Cohen*,
  756 A.2d (2000) ................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...........................................................................2

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
  974 F.2d 1358 (3d. Cir. 1992) ............................................................3

*Boyle v. Cnty. of Allegheny Pennsylvania*,
  139 F.3d 386 (3d Cir. 1998) ...............................................................2

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...........................................................................2

*Cipriani v. Sun Pipe Line Co.*,
  574 A.2d 706 (Pa. Super. 1990) .......................................................21

*Davis v. Monroe Cnty. Bd. Of Educ.*,
  526 U.S. 629 (1999) ........................................................................3, 4

*Doe v. Williamsport Area Sch. Dist.*,
  699 F. Supp. 3d 306 (M.D. Pa. 2023) .................................................1

*Facenda v. N.F.L. Films, Inc.*,
  542 F.3d 1007 (3d Cir. 2008) ...........................................................10

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998) ...........................................................................3

*Herr v. Booten*,
  580 A.2d (Pa. Super. 1990) ..............................................................21

*Howard v. Blalock Elec. Serv. Inc.*,
    742 F.Supp.2d 681 (W.D. Pa. 2010) .....................................................................10

*Kleinknecht v. Gettysburg Coll.*,
    989 F.2d 1360 (3d. Cir. 1993) ............................................................................12

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ..........................................................................................2

*Mahanoy Area Sch. Dist. v. B.L. by & through Levy*,
    594 U.S. 180 (2021) ..........................................................................................17

*Montagazzi v. Crisci*,
    994 A.2d 626 (Pa. Super. 2010) .........................................................................21

*Moran v. Valley Forge Drive-In Theater, Inc.*,
    246 A.2d 875 (1968) ..........................................................................................11

*Morena v. S. Hills Health Systems*,
    462 A.2d 680 (1983) ....................................................................................11, 17

*Pahssen v. Merrill Community Sch. Dist.*,
    668 F.3d 356 (6th Cir. 2012) ...............................................................................4

*Schneider v. Works*,
    223 F. Supp. 3d 308 (E.D. Pa. 2016) ..................................................................10

## Statutes

20 U.S.C. § 1681(a) ..................................................................................... 3

24 P.S. § 1-111 ........................................................................................... 4

42 Pa. C.S. § 8542(b)(9) .............................................................................. 9

42 Pa. C.S. § 5551(7) .................................................................................. 9

24 Pa. Stat. Ann. §13-1317 ......................................................................... 17

## Rules

Fed. R. Civ. P. 56(a) ................................................................................2

## **Other Authorities**

Restatement (Second) of Torts §314(A)(4)..............................................11

Restatement (Second) of Torts §314A ....................................................17

Restatement (Second) of Torts §321 .......................................................21

Restatement (Second) of Torts § 322 ......................................................21

## I.    PROCEDURAL HISTORY

Plaintiff initiated this case on September 6, 2022. ECF 1. Plaintiff filed a Second Amended Complaint on June 26, 2023. ECF 92. Defendant filed its Motion to Dismiss on June 26, 2023 and it was denied in its entirety, *see Doe v. Williamsport Area Sch. Dist.*, 699 F. Supp. 3d 306 (M.D. Pa. 2023). Defendant filed its Motion for Summary Judgment on October 1, 2025. ECF 156.

## II.    STATEMENT OF FACTS

Plaintiff filed, and incorporates into, its Response in Opposition to Defendant's Motion for Summary Judgment, a Reply to Defendant's Statement of Material Facts with exhibits attached.[1]

## III.    QUESTIONS PRESENTED

A. Has Plaintiff established a genuine dispute of material fact demonstrating that school officials had knowledge of severe sexual harassment, responded with deliberate indifference, and denied Plaintiff educational benefits?

Suggest Answer: Yes

B. Has Plaintiff established a genuine dispute of material fact that Plaintiff suffered sexual abuse by other students while under the school's care and supervision?

Suggest Answer: Yes.

---

[1] All citations to the Statement of Material Facts reference Plaintiff's Reply to Defendant's Statement of Material Facts.

C. Has Plaintiff established a genuine dispute of material fact demonstrating that Defendant breached its duty to protect Plaintiff which was a cause of Plaintiff's injuries?

Suggested Answer: Yes.

D. Is Defendant entitled to judgment as a matter of law when there are genuine issues of material fact in dispute?

Suggested Answer: No.

## IV.  <u>ARGUMENT</u>

### A. Standard of Review

A motion for summary judgment can only be granted when there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a). A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party "need not match, item for item, each piece of evidence proffered by the movant," but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a showing has been made, the nonmoving party must offer specific facts contradicting those averred by the movant. *Lujan v. Nat'l Wildlife*

*Fed'n,* 497 U.S. 871, 888 (1990). Inferences are drawn in the light most favorable to the non-moving party; where the nonmoving party's evidence contradicts the movant's, then the non-movant's evidence must be taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d. Cir. 1992).

### B. Defendant's Title IX Argument Fails

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." *See* 20 U.S.C. § 1681(a). A funding recipient may not be liable for damages unless its deliberate indifference "subjects" its students to harassment. *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 645 (1999). The deliberate indifference must "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. *Id*. The harassment must occur under the operations of a funding recipient and must take place in a context subject to the school's control. *Id.*

In *Gebser*, the United States Supreme Court held a school may be liable when it is deliberately indifferent to known acts of harassment. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287-88 (1998). The Court found liability is first premised upon the funding recipient having "notice of their potential liability." *Id*. The *Gebser* Court decided Title IX places a duty on the recipient not to permit

harassment against students and that recipients violate Title IX when they "remain deliberately indifferent to this form of misconduct." *Davis*, 526 U.S. at 643.

The *Davis* Court noted that under a deliberate indifference theory the recipient may only be held liable where the recipient "has some control over the alleged harassment." *Id.* See *Davis*, 526 U.S. at 648 ("funding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where *the recipient's response to the harassment or lack thereof* is clearly unreasonable in light of the known circumstances.") (emphasis added).

"Deliberate indifference" has three elements: "(1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff access to the educational opportunities or benefits provided by the school, (2) the funding recipient had actual knowledge of the sexual harassment, and (3) the funding recipient was deliberately indifferent to the harassment." *Pahssen v. Merrill Community Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012).

The entire basis of a *Davis* claim can be made out on the recipient school's "*own* decision to remain idle" in the face of known harassment. *Id*. at 641.

### Knowledge by Appropriate School Officials

Prior to the trip, WASD knew it had hired Coach Miller in violation of 24 P.S. § 1-111, demonstrating deliberate disregard for student safety laws. Statement of Material Facts ¶6, 11. Officials knew B.M. was reprimanded for conduct violations.

Statement of Material Facts ¶52-54. Critically, WASD knew as of February 2018—when rooms were purchased—that students would be spread across eight different floors in Myrtle Beach but took no corrective action. Statement of Material Facts ¶28, 83.

WASD provided no supervision training, no overnight trip protocols, and no guidance on preventing/responding to bullying or sexual misconduct. Statement of Material Facts ¶62, 64, 65. Coach Moore admitted receiving no instruction on supervision and acknowledged students need supervision because "they're kids" who "can do stupid things" that could be "a danger to themselves or to others." Statement of Material Facts ¶61. No one monitored hallways after lights out. Statement of Material Facts ¶82, 86.

WASD had actual knowledge of the assault while in Myrtle Beach. Weber states: "School District was aware in Myrtle Beach." Exh. 33; Exh. 7 Page 50, Lines 10-15. ¶116-117, 134, and Agent Scicchitano corroborated this. Exh. 8 Page 142, Lines 1-21. ¶134.

J.Z. showed Plaintiff the video while still on the trip. ¶114. N.M. testified players found the assaults "disgusting" and believed: "they had to have known. There is no way something like that doesn't get back to them." Exh. 4 Page 73, Line 1 through Page 79, Line 15. ¶128-129.

Additional school officials gained actual knowledge in May 2018, when Weber showed Dr. Pardoe, Athletic Director, and others the video of B.M. assaulting Plaintiff. Statement of Material Facts ¶132-137. Officials knew the video had been recorded and circulated. Pardoe's order to delete videos demonstrates knowledge of ongoing harm. Statement of Material Facts ¶150-151.

### *Deliberate Indifference*

Despite knowing supervision would be nearly impossible across eight floors, WASD took no corrective measures. Statement of Material Facts ¶83. Dr. Bowers admitted WASD had "no specific training module" for coaches. Statement of Material Facts ¶62. Moore conceded "we probably could have handled that situation better." Statement of Material Facts ¶79.

After learning of the assault, WASD's response was deliberately indifferent. Pardoe instructed students to delete videos—tampering with evidence rather than protecting victims. Statement of Material Facts ¶150-151; Exh. 7 at 54-55. Weber "put Pardoe in charge of investigating the Child Line Report." Weber never interviewed B.M., nor did he interview the head coach, athletic director, or videographer. Statement of Material Facts ¶13. Agent Scicchitano concluded this sham investigation warranted Obstruction of Justice charges against both Pardoe and Weber. Statement of Material Facts ¶14.

WASD denies a sexual assault occurred. Statement of Material Facts ¶153. Pardoe concluded the incident did not constitute harassment or meet Title IX thresholds. Statement of Material Facts ¶153, 156-158. This determination directly contradicts the ChildLine report stating B.M. "places exposed penis onto John Doe's mouth." Statement of Material Facts ¶105. Pardoe refused to cooperate with Myrtle Beach Police, referring them to Weber, who failed to report the assault. Statement of Material Facts ¶13, 105. J.Z. testified WASD threatened players to prevent reporting. Exh. 13 Page 222, Lines 8-19. ¶116. When Pardoe visited J.Z.'s parents' house, he told them: "you have nothing to worry about" and "it's not gonna go anywhere." Statement of Material Facts¶161. This demonstrates deliberate indifference—silencing witnesses rather than protecting victims.

<u>*Severe, Pervasive, and Objectively Offensive Harassment*</u>

The assault and its aftermath create genuine factual disputes regarding severity. Plaintiff testified B.M. put his penis "between my lips" and "in my mouth." Statement of Material Facts ¶95, 98. The video shows Plaintiff "recoiling from something touching his face." *Id*.

B.M. testified falsely for three hours before seeing the video, then admitted putting his penis in Plaintiff's face. Statement of Material Facts ¶76, 80, 102-103. The assault was video recorded and disseminated. B.R. testified he observed the video in the WAHS cafeteria "along with numerous other students." Statement of

Material Facts ¶88. Upon returning to school, students who were not on the trip began bullying Plaintiff by repeatedly calling him "dick lips". Statement of Material Facts ¶172-176. The widespread video dissemination created a pervasively hostile environment.

## *Denial of Educational Benefits*

Plaintiff suffered clear denial of educational benefits. He requested and received homebound education the following year, removing him from a normal educational environment and peer interactions. Statement of Material Facts ¶170. He withdrew from WASD entirely in August 2019. Statement of Material Facts ¶187.

## *Disputed Facts Require Jury Determination*

Fundamental factual disputes exist: whether penetration occurred (Statement of Material Facts ¶95, 98, 101-105); extent and impact of post-incident harassment (Statement of Material Facts ¶172-184); whether officials acted in good faith or engaged in cover-up (Statement of Material Facts ¶13-14); and officials' selective credibility determinations favoring WASD employees (Statement of Material Facts ¶13). Statement of Material Facts ¶13.

WASD concealed critical documents from a Right to Know Request, only producing them after litigation commenced. Statement of Material Facts ¶19-23, 26. WASD failed to produce Coach Miller's Code of Conduct despite court-ordered

discovery and admitted they lack the 2018 WASD Handbook. Statement of Material

Facts ¶33-34.

### C. Defendant is Not Entitled to Immunity Because Genuine Issues of Material Fact Exist Regarding the Sexually Assault

Governmental entities are not entitled to immunity when they negligently fail

to protect students from sexual abuse. Under the Political Subdivision Tort Claims

Act—Exceptions to Governmental Immunity, 42 Pa. C.S. § 8542(b)(9), "The

following acts by a local agency or any of its employees may result in the imposition

of liability on a local agency: Sexual abuse - Conduct which constitutes an offense

enumerated under 42 Pa. C.S. § 5551(7) (relating to no limitation applicable) if the

injuries to the plaintiff were caused by actions or omissions of the local agency

which constitute negligence." The record evidence establishes that Plaintiff was

subjected to sexual abuse by his teammates by having a penis put on his lips and into

his mouth. Defendant's negligent failure to protect Plaintiff from this assault—and

its subsequent deliberate indifference to the harassment that followed—strips

Defendant of any immunity defense. Plaintiff testified:

**Q. What did the first video depict?**

A. Braden with his pants like halfway down, bending over the couch
as I was sleeping and basically putting his penis in my mouth.

\*\*\*\*

**Q. Can you tell me what you recall happening when Braden
Mazzanti came to your hotel room on one night during the trip?**

A. I don't know what time it was at, but I was sleep. From video that I was shown, Braden Mazzanti basically -- It was two separate videos. One showed that he put his penis in between my lips as I was sleep, and then another one shows him climbing on the desk right by the couch, pulling his pants down, and kind of like just sitting on top of my face.

\*\*\*\*

**Q. Regardless of how it's phrased in that report and regardless of who was in that room at that time when you were discussing it, Braden Mazzanti's penis was placed in your mouth, correct or not correct?**

A. Correct.

Exh. 10 Doe depo, 98:6-10; 91:24 – 93:11; 242:24 - 243:-5.

"Conflicting deposition testimony unsupported by record evidence may create a genuine issue of material fact, and the Court cannot determine which version is credible at the summary judgment stage. *Schneider v. Works*, 223 F. Supp. 3d 308, 315 (E.D. Pa. 2016); *citing Howard v. Blalock Elec. Serv. Inc.*, 742 F.Supp.2d 681, 707 (W.D. Pa. 2010) ("This Court cannot make credibility-related findings when ruling on a motion for summary judgment."); *citing Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1024 (3d Cir. 2008) (finding that the District Court's rejection of defendants' deposition testimony when ruling on a summary judgment motion was an inappropriate credibility determination)."

Defendant unilaterally declared the video evidence "inconclusive" and relies on its own witness to contradict Plaintiff's sworn testimony. This factual dispute

alone mandates denial of summary judgment. Defendant asks this Court to wholesale accept its witness's account while completely disregarding Plaintiff's testimony. Such selective credibility assessments are impermissible at this stage.

### D. The record establishes genuine disputes regarding WASD's duty, breach, causation, and damages.

WASD argues that there was no negligence of its own and there was no special duty to Plaintiff. There is a five-factor test to determine whether a duty of care exists: (1) the relationship between parties, (2) utility of defendant's conduct, (3) nature and foreseeability of the risk in question, (4) consequences of imposing the duty, and (5) public interest in the proposed solution. *Althaus ex rel. v. Cohen*, 756 A.2d 1168 (2000). "[D]uty is predicated on the relationship existing between the parties at the relevant time." *Morena v. S. Hills Health Systems*, 462 A.2d 680, 684 (1983). There are four special relationships that give rise to a duty to protect, one of which is "one who voluntarily takes custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other." Restatement (Second) of Torts §314(A)(4). The type of foreseeability that determines a duty of care, as opposed to proximate cause is not dependent on the foreseeability of a specific event. *Moran v. Valley Forge Drive-In Theater, Inc.*, 246 A.2d 875, 878 (1968). "The concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of

the precise chain of events leading to the injury." *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1369 (3d. Cir. 1993).

### *Failure to Train*

Defendant claims staff were properly trained. However, Miller testified he received no training on supervising players on overnight trips. Statement of Material Facts ¶61, 65. Bowers admitted WASD has "no specific training module" for coaches on overnight trips. Statement of Material Facts ¶62.

### *Negligent Hiring*

WASD knowingly hired Coach Miller in violation of 24 P.S. § 1-111, which prohibits hiring until three years after completing a DUI sentence. Miller was convicted of his second DUI in Pennsylvania in August 2012, completed his sentence approximately two and a half years later, yet was hired in 2016. Statement of Material Facts ¶6.

This is a deliberate disregard for laws designed to protect students. Statement of Material Facts ¶11. WASD previously employed a sexual predator. Exh. 6 Pages 62:17-25, 63-66:1-15. Statement of Material Facts ¶43. This pattern establishes WASD's disregard for student safety.

### *Failure to Adopt or Follow Procedures*

Defendant claims supervision plans were developed and implemented. Bowers admitted there is no policy for athletic trips. Exh. 5 Pages 77:22—78:11,

79:14-16. ¶60. The absence of policies is compounded by WASD's failure to produce critical documents. WASD failed to produce Coach Miller's Code of Player Conduct and the 2018 Handbook. *See* Exh. 24 and Exh. 25. Statement of Material Facts ¶33-34.

Procedures that allegedly existed were not enforced. Miller testified that under his code of conduct, M.H. should have been removed from the team immediately for purchasing marijuana. Pardoe violated WASD policy by admittedly failing to report M.H.'s drug purchase to authorities as required . Exh. 3. 59:16-24, 60-62:1-6. Statement of Material Facts ¶9.

<u>*Failure to Supervise*</u>

WASD placed students across eight different floors. Statement of Material Facts ¶28, 83. Defendant provided no evidence of attempts to consolidate rooms or adjust supervision protocols. Any supervision that existed was inadequate. Coaches only conducted one room check per night. Statement of Material Facts ¶75, 77. Coaches did not monitor hallways. Exh. 9, 36:2-16. Statement of Material Facts ¶82. Coaches stayed on the first floor. Exh. 10 73:15-16, 74:6-10; Exh. 12 109:22. Statement of Material Facts ¶28.

Miller admitted that after room check, "kids could go to each other's rooms." Exh. 9, 43: 20-25, Page 44, Lines 1-2. Statement of Material Facts ¶81. "Nothing prevented a player from leaving the room." *Id*. at 37:10-16. Statement of Material

Facts ¶84. When confronted about posting coaches in hallways, Moore admitted they could have handled it better. Exh. 12 Page 198: 10-22. Statement of Material Facts ¶79.

The supervision failures enabled multiple sexual assaults. B.R. testified J.Z. showed him "multiple videos that were taken during the trip, including the video of John Doe and the video of N.W. being sodomized with a TV remote." ¶113. N.M. confirmed this: "what I heard was that in his room he put a TV remote I think or like an Xbox remote or something in [N.W.'s] ass." Exh. 4. Page 71, Line 15 through Page 72, Line 3. ¶113, 128.

Another student reported "other boys running naked" and that B.M. and "Brock Moyer" were "naked and trying to wrestle around with people." Exh. 15. Page 22, Lines 9-25, Page 23, Lines 3-5. ¶152.

### *Causation*

Defendant argues Plaintiff cannot prove causation because the incident's exact timing is unknown. Plaintiff testified the incident occurred "like 10 something." Exh. 10 174: 9-21. Statement of Material Facts ¶91. J.Z. testified it was "later at night." Exh. 13. 39: 4; 40: 14-25; 41: 1. Statement of Material Facts ¶92. Freed's notes state 10:30-10:45 p.m. Statement of Material Facts ¶93.

The exact minute is immaterial. The multiple supervision failures directly enabled the assault: (1) no supervision training (Statement of Material Facts ¶61-62,

65); (2) no overnight trip protocols (Statement of Material Facts ¶60, 62); (3) students spread across eight floors with knowledge and no protocol (Statement of Material Facts ¶83); (4) only one room check per night with no monitoring after (Statement of Material Facts ¶75, 77, 82); (5) players allowed in each other's rooms after check (Statement of Material Facts ¶81); (6) coaches on different floors than students (Defense Statement of Material Facts ¶28); (7) nothing preventing players from leaving rooms (Statement of Material Facts ¶84); and (8) B.M. was allowed to access Plaintiff's room because of the failure in supervision by Defendant. (Statement of Material Facts ¶59).

*Post-Incident Response/Continuing Harm*

Defendant dismisses post-incident failures as non-causal. This ignores that negligent post-incident response caused continuing harm and denied Plaintiff remedial measures. Pardoe ordered students to delete videos. Exh. 7 Pgs. 54-55. Statement of Material Facts ¶13, 150-151.

The investigation was a sham. As stated, Weber "put Pardoe in charge of investigating the Child Line Report" rather than conducting a proper investigation. Statement of Material Facts ¶13. Weber failed to interview critical people. Exh. 7 Pgs. 62-64, 70-71. Statement of Material Facts ¶13.

Pardoe refused to cooperate with Myrtle Beach Police and never reported the assault to them. Exh. 7 46:5-20; 76:1-25; 77:1-5; 109-118. Statement of Material

Facts ¶13, 105. Weber admitted he "only believed the testimony of all the WASD employees"—demonstrating bias. Exh. 7 Pgs. 123-124. Statement of Material Facts ¶13.

B.R. testified he observed the video in the WAHS cafeteria "with other students." Statement of Material Facts ¶88. Students NOT on the trip called Plaintiff "dick lips" for weeks. Exh.10 112:20 - 113:8; 113:9-20; 114:21-24; 115:9-17; 197:3-13; 239:16—240:2. Statement of Material Facts ¶172-176.

WASD threatened players into silence. J.Z. testified: "Q. ...the only threat that you were really concerned about...was the threat that you might not play again on team. Correct? A. That's basically it, yeah. Q. And the only person who can make that threat come to reality is an agent or employee of [WASD]. Is that right? A. Yeah." Exh. 13 Page 222, Lines 8-19. ¶116.

Plaintiff testified J.Z. showed him two videos—one showing B.M.'s penis, another showing B.M.'s "butt." ¶99, 111. Only one video was produced. J.Z. admitted he "deleted the video of the incident as well as any other video he had in his possession in accordance with the instructions of Pardoe." ¶130, 149. This evidence destruction prevented full understanding of the assault's scope.

### E. Defendant's NIED Arguments Fail on All Three Elements: Special Relationship, Extreme Emotional Harm, and Causation as There Exists a Genuine Issue of Material Fact to Each.

In *Toney v. Chester County Hosp.*, the court considered multiple theories of recovery available for NIED claims. A.2d 192, 197-98 (Pa. Super. 2008). The pre-existing duty rule is not intended to cover all breaches, but it is to be applied to *special relationships* which encompass the plaintiff's emotional well-being. *Id.* at 117. (emphasis added). The emotional harm suffered should be the kind of harm that a reasonable person should not be expected to bear and is described as "likely to be experienced as a visceral and devastating assault on the self." *Id*.

24 Pa. Stat. Ann. §13-1317 grants school personnel authority equivalent to parents over student conduct and behavior. "The doctrine of *in loco parentis* treats school administrators as standing in place of students' parents under circumstances where the children's actual parents cannot protect, guide, and discipline them." *Mahanoy Area Sch. Dist. v. B.L. by & through Levy*, 594 U.S. 180, 189 (2021). A duty is predicated on the relationship existing between the parties at the relevant time and requires some degree of knowledge. *Morena v. S. Hills Health Sys.*, 462 A.2d 680, 684 (1983). The determination of a special relationship is fact specific. *Id*. The duty in each case is to exercise reasonable care under the circumstances to protect another. Restatement (Second) of Torts §314A at cmt. *e*.

### *Special Relationship Exists*

Defendant claims no special relationship exists between Plaintiff and WASD. This ignores Pennsylvania law recognizing schools' heightened duty when

exercising custodial control over minor students. WASD assumed complete custody and control over Plaintiff during the overnight trip. Bowers testified that school district policies apply whether students are "playing in Montoursville or Myrtle Beach" and "they still have to abide by the rules of our school district." Exh. 5 79:17-25, 80:1-8. Statement of Material Facts ¶60.

Bowers and McCann confirmed coaches were responsible for supervision on the Myrtle Beach trip. Exh. 5 93:24—94:5, 94:21-24; McCann Dep. 28:17-23. Statement of Material Facts ¶38. WASD selected accommodations, assigned rooms, controlled students' schedules, set curfews, and prohibited students from leaving the hotel—exercising total control over minor students hundreds of miles from home. Statement of Material Facts ¶1.

### *Extreme Emotional Harm Established*

Plaintiff was sexually assaulted while unconscious and defenseless. Plaintiff testified B.M. put his penis "between my lips" and "in my mouth." Exh. 10 92:7-8; 93:2-10; 177:17-18. Statement of Material Facts ¶95, 98. Sexual assault of an unconscious minor victim constitutes a visceral and devastating assault on the self.

B.R. observed the video in the WAHS cafeteria "with other students." Statement of Material Facts ¶88. Plaintiff's assault became entertainment for his peers—a public humiliation that compounds the psychological devastation. Students

not on the trip knew about the assault and harassed him. Exh. 10 113:9-20; 239:16—240:2. Defense Statement of Material Facts ¶173.

The objective evidence corroborates extreme emotional harm. Plaintiff sought counseling because of the incident. Exh. 10 131:17-24; 132:1-8; 158:24; 162:2-8; 164:8-9; 215:14-18. He required homebound education the following year, removing him from normal peer interactions. Exh. 5 217:17—218:21; Statement of Material Facts ¶170. Plaintiff withdrew from WASD entirely in August 2019. Statement of Material Facts ¶187.

The cumulative impact establishes extreme emotional harm: (a) sexual assault while unconscious; (b) video recording of the assault; (c) video shown to other students; (d) weeks of "dick lips" harassment; (e) students not on the trip knowing about the assault; (f) WASD's official denial that sexual assault occurred (Statement of Material Facts ¶10); (g) inadequate discipline of the perpetrator (Statement of Material Facts ¶160, 162); (h) forced homebound education; and (i) complete withdrawal from WASD. This type of devastating psychological trauma forced Plaintiff to abandon his school, his teammates, and his community.

### *Causation Established*

WASD's supervision failures created the opportunity for assault: (a) no supervision training (Statement of Material Facts ¶61-62, 65); (b) no overnight trip protocols (Statement of Material Facts ¶60, 62); (c) students spread across eight

floors with WASD's knowledge and no protocols (Statement of Material Facts ¶83); (d) only one room check per night with no monitoring after (Statement of Material Facts ¶75, 77, 82); (e) players allowed in each other's rooms after check (Statement of Material Facts ¶81); (f) coaches on different floors than students (Defense ¶28); (g) nothing preventing players from leaving rooms (Statement of Material Facts ¶84); and (h) B.M. was allowed to access Plaintiff's room because of the failure in supervision by Defendant. (Statement of Material Facts ¶59).

But for WASD's complete failure to implement meaningful supervision protocols, B.M. would not have had unsupervised access to Plaintiff's room. Statement of Material Facts ¶79. WASD knew since February that students would be across eight floors yet took no corrective action. Statement of Material Facts ¶83.

This official denial by the district that Plaintiff was not sexually assaulted, combined with the cover-up, directly caused additional emotional distress by invalidating Plaintiff's trauma. Despite knowing the video circulated, and Plaintiff was harassed for weeks (Statement of Material Facts ¶172-176), no action was taken.

### *Conclusion*

These facts establish genuine disputes on all NIED elements: (1) whether a special relationship existed; (2) whether there was extreme emotional harm; and (3) whether WASD's supervision failures enabled the assault and post-incident failures

that caused continuing harm. Credibility determinations regarding the extent of emotional harm and whether WASD's conduct caused it require jury resolution.

### F. Defendant's Failure to Rescue Arguments Fail: WASD Placed Plaintiff in Harm's Way and Failed to Rescue Him from Continuing Harm.

Restatement (Second) of Torts §321, "Duty to Act When Prior Conduct is Found to be Dangerous," provides:

(1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.

(2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.

The Superior Court relies on the provision that a defendant who created a risk of harm was under a duty to prevent that harm from taking effect. *Montagazzi v. Crisci*, 994 A.2d 626 (Pa. Super. 2010); *Cipriani v. Sun Pipe Line Co.*, 574 A.2d 706, 715 (Pa. Super. 1990).

Restatement (Second) of Torts § 322 establishes liability:

If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

A duty to rescue arises if the actor was legally responsible for placing the victim in the perilous position. *Herr v. Booten*, 580 A.2d 115, 1121 (Pa. Super. 1990).

*WASD Placed Plaintiff in Harm's Way*

Defendant claims no evidence supports placing Plaintiff in harm. B.M. was allowed to access Plaintiff's room because of the failure in supervision by Defendant.." Exh. 9 18:13-23. Statement of Material Fact ¶52; ¶59. WASD knew students would be spread across 8 floors, yet implemented no supervision protocols. Statement of Material Fact ¶83. WASD provided no training (Statement of Material Fact ¶65), no overnight trip policies (Statement of Material Fact ¶60, 62), and no monitoring. Statement of Material Fact ¶82.

This complete supervision breakdown constitutes placing Plaintiff in harm's way. WASD created the dangerous condition through deliberate failures, triggering the duty to rescue.

### *Post-Incident Failure to Rescue*

WASD gained actual knowledge in May 2018, when Weber showed the video of B.M. with his penis near Plaintiff's face. Statement of Material Fact ¶132-137. WASD knew Plaintiff needed aid and protection, and WASD's response caused additional harm to Plaintiff.

Pardoe ordered students to delete videos. Exh. 7 Pgs. 54-55. Statement of Material Fact ¶13, 150-151. Despite knowing the video circulated, WASD took no protective action. Students not on the trip harassed him and called Plaintiff "dick lips." Statement of Material Fact ¶172-176.

B.M. only received a two-game suspension and was allowed to remain at school. Statement of Material Fact ¶160, 162. Plaintiff went into homebound education (Statement of Material Fact ¶170) and left the school district (Statement of Material Fact ¶187). Isolating the victim while minimally disciplining the perpetrator demonstrates WASD's failure to rescue Plaintiff from foreseeable continuing harm.

WASD knew Plaintiff needed aid, but the response was to deny the assault occurred, cover up the investigation, provide inadequate discipline, and force Plaintiff out of school.

## V.    <u>CONCLUSION</u>

The factual record compels denial of summary judgment. A reasonable jury could find, among other things, that WASD hired Coach Miller in violation of state law, failed to train/supervise coaches on overnight trips, allowed unsupervised access between rooms, covering up the assault, destroying evidence, and forcing the victim into isolation while his assailants remained at school.

Accordingly, Plaintiff requests that the Court deny Defendant's motion for summary judgment in its entirety.

**LAFFEY, BUCCI, D'ANDREA, REICH & RYAN**

Date: October 29, 2025    By:    */s/ Gaetano D'Andrea*

_____

23

Gaetano D'Andrea, Esq.
Ragha Narasimhan, Esq.
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
(T): (215) 399-9255
(E): gdandrea@laffeybucci.com
(E): rnarasimhan@laffeybucci.com


**STAPP LAW, LLC**

*/s/ Gregory A. Stapp*
_____
Gregory A. Stapp, Esq.
153 West 4th Street, Suite 6
Williamsport, PA 17701
(T): (570) 326-1077
      (570) 651-9420
(E): gstapp@stapplaw.net

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN DOE,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **NO. 4:22-1387-MWB** |
| **v.** | : | |
| | : | |
| **WILLIAMSPORT AREA** | : | |
| **SCHOOL DISTRICT,** | : | |
| **Defendant.** | : | **Hon. Matthew W. Brann** |

## CERTIFICATE OF WORD COUNT

Undersigned counsel for Plaintiff hereby certifies that the foregoing Brief complies with the word count limit pursuant to Local Rule 7.8(b)(2). The Microsoft Word Count feature calculated the total number of words to be 4,989.

## CERTIFICATE OF SERVICE

I, Gaetano D'Andrea, counsel for Plaintiff, hereby certify that a true and correct copy of Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment is available and was served through the Court's ECF filing to all counsel of record.

**LAFFEY, BUCCI, D'ANDREA, REICH & RYAN**

Date: October 29, 2025    By:    */s/ Gaetano D'Andrea*

_____

Gaetano D'Andrea, Esq.

iii

Ragha Narasimhan, Esq.
1100 Ludlow Street, Suite 300
Philadelphia, PA 19107
(T): (215) 399-9255
(E): gdandrea@laffeybucci.com
(E): rnarasimhan@laffeybucci.com


**STAPP LAW, LLC**

*/s/ Gregory A. Stapp*

_____

Gregory A. Stapp, Esq.
153 West 4th Street, Suite 6
Williamsport, PA 17701
(T): (570) 326-1077
     (570) 651-9420
(E): gstapp@stapplaw.net

*Attorneys for Plaintiff*